## Minnesota Mutal Life Insurance Company v. Lizzie M. Link.

Gen. No. 12,921.

## Minnesota Mutal Life Insurance Company v. Mary Miller.

Gen. No. 12,922.

1. INSURANCE—*how contract of, construed.* A contract of insurance, where the language employed is that of the insurer, is construed most strongly against the insurer.

2. INSURANCE—*words "representations" and "warranties" construed.* The words, "representations" and "warranties" are not equivalent words.

3. INSURANCE—*when answer to question as to past ailments limited.* Held, from the language employed in the application for insurance, that the answer made by the insured with respect to ailments which had been suffered by him in the past, was not an absolute one but was limited by its express terms.

4. INSURANCE—*when statements and answers not warranties.* Held, that certain statements and answers made by an applicant for insurance, were not warranties.

5. INSURANCE—*when declarations of insured against interest constitute hearsay.* Declarations of the insured made sometime before the making of his application for insurance which are not shown to have been part of the *res gestae*, constitute mere hearsay.

6. INSTRUCTION—*in action upon insurance contract, held not erroneous.* Held, that an instruction in such an action, which pertained to the proofs of death, was not erroneous which told the jury that they must not take the physician's statements made in such proofs of death "as evidence tending to prove facts injurious to the case of the plaintiff in this action."

Action of *assumpsit*. Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed January 7, 1907.

TENNEY, COFFEEN, HARDING & WILKERSON, for appellant.

ALBERT M. KALES, for appellees.

MR. JUSTICE ADAMS delivered the opinion of the court.

The records in these two appeals are identical,

*nomine mutato,* and they were consolidated for hearing and heard together, and, for convenience, the words appellant and appellee will be used as applying to the appellant and the appellee in each appeal. Each suit is on an insurance policy hereinafter set forth in substance. The declaration is in the usual form in such cases, and consist of two counts, as originally filed, and certain additional counts subsequently filed.

The appellant pleaded the general issue to the original declaration and to the additional counts, and also filed a number of special pleas to the original declaration, averring, in substance, that the statements and answers of the insured, in his application for insurance, were not full, complete and true, and that the statement therein that he had not, at any time, suffered from bronchitis, or from any other serious ailment except pneumonia, was false and untrue, etc. These special pleas, as appellant's counsel say, in their argument, "were drawn on the theory that the statements in the application for insurance were to be treated, under the language of the application and the policy, as warranties, and that it was not essential to allege either the materiality of the statement, or the knowledge of its falsity on the part of the insured." The trial court sustained a demurrer to the pleas, holding that the statements in the application were not warranties, but representations, and, therefore, it was necessary for appellant to aver their falsity and appellee's knowledge thereof, whereupon appellant filed additional pleas, in accordance with the holding of the court, in some of which it was averred that the insured had bronchitis before he made application for insurance, and in others, that he had gall-stones before making said application. To these pleas the appellee replied that the statements and answers in the application were fairly and honestly made, according to the best knowledge and be-

lief of the insured, and were not known to the insured to be false or untrue.

By the policy appellant agrees to pay $3,000 as follows: $1,000 to Lizzie Miller Link, daughter of the insured, $1,000 to Mary Miller, his wife, and $1,000 to Don Miller Welsh, his nephew. The policy contains a provision for extension of the insurance, after which, and next before the signatures of the president and secretary of appellant, is the following clause: "The provisions for loans, surrender values, paid up policies, and extended insurance, and the options, privileges and conditions stated on the second and third pages hereof, form a part of this contract and of any renewal thereof, as fully as if recited at length over the signature hereto affixed." In the medical examination of the insured the following occurs:

"1.   Except as herein stated are you now and usually in good health and do you believe yourself to be physically sound?    Yes.

The medical examiner will request applicant to carefully read the following questions:

2.   Have you at any time suffered from chronic cough, persistent loss of weight, blood spitting, or hemorrhages of any kind, recurring fever, night sweats, shortness of breath, difficult breathing, pain in chest, pleurisy, pneumonia, asthma, bronchitis, consumption, tuberculosis, or any other form of lung disease, symptoms of disease of heart, or kidneys, or bladder, renal or bilious colic, gravel, calculi, gall stones, jaundice, severe or chronic dyspepsia, chronic diarrhœa, dysentery, skin diseases, ulcers, bleeding piles, fistula, abscesses, tumors of any kind, swelling of the glands, varicose veins, syphilis, nervous trouble, nervous exhaustion, delirium, insomnia, paralysis, 'general debility,' fainting fits, sunstroke, appendicitis, peritonitis, obstruction of the bowels, inflammatory rheumatism, chronic rheumatism, gout-surgical operation, severe injury, yellow fever, dropsy, palpitation, apo-

plexy, insanity, habitual headaches, dizziness, typhoid fever, disease of the joints, cancer, scrofula, influenza?

Having carefully read and fully understanding the foregoing questions, I declare that I have never had any of the diseases mentioned or any other serious ailment, except:

Name of disease.

Duration of illness.

Name and address of attending physician.

(a) Pneumonia at the age of 9 yrs. Several weeks. Dr. Lindsey. (b) None since."

Next following the questions and answers in the medical examination is the following:

"I, the undersigned, do hereby certify that I am the applicant for life insurance mentioned and described in the foregoing statements, representations, questions and answers; that I have read and fully understand each and every of said statements, representations, questions and answers; that said answers, statements and representations, and each and all of them, as above written, are the answers, statements and representations given and made by me and were written by me under my direction and in my presence. And I do further declare and agree that each and every of said answers, statements and representations made by me as aforesaid is, and are material to this application, and any action taken thereon by said The Minnesota Mutual Life Insurance Company, and I warrant and declare each and every of said answers, statements and representations to be full, complete and true; and that if either or any of said answers, statements or representations be not full and complete, or if either or any of them be untrue in any respect, then and in such case any policy issued hereon shall be null and void from the beginning, except as shall be otherwise expressly provided in the policy.

"I do further agree that any policy issued upon this application and accepted by me, whether of the form or kind hereby applied for, or otherwise, shall bear the same date as this application, but shall not take effect until actually delivered to me, and the

first premium actually paid the company, and that in determining the due date of any premium, the reckoning shall be from the date of the policy.

"And I further hereby agree that this application and everything therein contained, shall be and constitute a part of any policy issued thereupon.

"Dated this 20th day of January, 1902.

JOHN P. MILLER, Applicant."

The insured died May 21, 1902, of pneumonia. The jury found the issues for appellee and judgment was entered on the verdict.

Counsel for appellee contends, with reason, as we think, that the application for insurance is not made a part of the policy by the policy itself. It is certainly not made a part of the policy in terms. The only language in the policy which can, by any possibility, be claimed as making the application a part of the policy, is that in the last clause of the policy, next preceding the signatures of appellant's president and secretary, which clause is above quoted, and the only words in that clause which can be claimed to make the application a part of the contract, are the words "options, privileges and conditions stated on the second and third pages hereof," etc. The answers of the assured to questions put by the medical examiner are neither options nor privileges nor conditions. However, assuming that, by the application itself, including the certificate signed by the assured, quoted in the preceding statement, the application is made a part of the policy, it must be construed as if inserted therein, in appropriate language. This is warranted by the language of the policy, viz., "Form a part of this contract, etc., as fully as if recited at length over the signatures hereto affixed." Treating the said certificate of the assured as being in the policy, in appropriate language, we find the answers referred to six times as statements, representations and answers. It must be presumed that the word "representations" was used by

the appellant advisedly, and in the true sense of that word, as distinguished from warranties.

The appellant wrote the policy and also the certificate of the assured, and the construction, in case of doubt, must be against appellant. It is not permissible to interpret the words "representations" and "warranties" as equivalent words, meaning the same thing; the rule is that, in construing a contract, the construction must be such that "if it can be prevented, no part of it, either in words or sentences, shall be regarded as superfluous or void." Morris v. Southworth, 154 Ill. 118, 125. Our conclusion, therefore, is, that appellant, in preparing the certificate of the assured, relied on as a warranty, did not intend, to say the least, that all his answers should be deemed warranties. It is true, that he warrants the representations to be true, but this only applies to the representations considered as such.

It could not reasonably have been intended by appellant that the assured would warrant that he had never had any of the numerous ailments mentioned in the question; for instance, shortness of breath, blood spitting, nervous trouble, difficulty of breathing, dysentery, etc. In respect to an answer to a question as to whether the applicant for insurance had any of numerous diseases and ailments, the court, in Moulor v. American Life Ins. Co., 111 U. S. 343, 344, says: "The applicant was required to answer yes or no as to whether he had been afflicted with certain diseases. In respect to some of those diseases, particularly consumption, and diseases of the lungs, heart, and other internal organs, common experience informs us that an individual may have them, in active form, without at the time being conscious of the fact and beyond the power of any one, however learned and skillful, to discover. Did the company expect, when requiring categorical answers as to the existence of diseases of that character, that the applicant should answer with absolute certainty about mat-

ters of which certainty could not possibly be predicated? Did it intend to put upon him the responsibility of knowing that which, perhaps, no one, however thoroughly trained in the study of human diseases, could possibly ascertain?''

The answer to the question as to ailments is materially qualified. It is, ''Having carefully read and fully understanding the foregoing questions, I declare that I have never had any of the diseases mentioned, or any other serious ailment except pneumonia.'' The words ''or any other serious ailment,'' limit the answer to such of the ailments mentioned in the question as were serious, and even though the statements, etc., should be construed as warranties, the warranties would be limited to such of them as were serious.

Globe Life Ins. Association v. Wagner, 188 Ill. 133, was a much stronger case for the contention of the insurance company that the answers to the questions of the medical examiner were warranties, than is the present case for appellant's like contention. In that case the word representations did not appear in the agreement of the assured as to warranty. There can be no question that the warranty in that case was in express terms. This question was asked and answer given:

Q. ''How many brothers dead?''

Ans. ''None.''

The answer was untrue in fact, a brother of the assured having died more than four years before the application for insurance; but there was no evidence that the assured knew of his death. The court held the answer a mere representation, imposing on the company the burden of proving that the answer was fraudulent or intentionally false, and say, among other things: ''In the absence of explicit, unequivocal stipulations requiring such an interpretation, it should not be inferred that the insured or the appellee took a life policy with the distinct understanding that it should be void if any statements made in the medical exam-

ination should be false, whether the insured was conscious of the falsity thereof or not. Moulor v. American Life Ins. Co., 111 U. S. 335. Whether or not the deceased knew of the death of his brother at the time of the application for insurance was a question for the jury, and no evidence of such knowledge appears in the record. To hold that, as a precedent to any binding contract, he should guarantee absolutely that none of his brothers were dead would be unreasonable, in the absence of a more explicit stipulation than here appears. It not infrequently happens that a man loses trace of all or a part of his relations, and to hold him to absolutely guarantee that they were living, in order that he might obtain insurance, would sometimes be to require an impossibility, and would be almost absurd.''

In 2nd Joyce on Insurance, the learned author distinguishes between warranties and representations (sec. 1882), and says (sec. 1890): ''The question whether a statement is a representation merely, or a warranty, is dependent largely on the form of expression and the apparent purpose of the statement, with a tendency on the part of courts to favor a construction that they are representations, in cases of doubt.'' This tendency of the courts mentioned by the author is in strict accord with the well established rule that a contract must, if possible, be so construed *ut res magis valeat, quam pereat.*

The use of the word ''representations'' so frequently in the statement of the assured, is, of itself, sufficient to create a doubt as to the intention of the parties. This statement contains the words ''statements, representations, questions and answers.'' In Moulor v. Am. Life Ins. Co., 111 U. S. 335, the court, after pointing out a difference between the language of the policy and the application, say: ''Thus we have one part of the contract apparently stipulating for a warranty, while another part describes the statements of the assured as representations. The doubt as to

the intentions of the parties must, according to the settled doctrines of the law of insurance, recognized in all the adjudged cases, be resolved against the party whose language is to be interpreted." *Ib.* 342. The statement signed by the assured, commencing, "I, the undersigned, do hereby certify," was prepared by and is the language of appellant.

In Fitch v. Am. Popular Life Ins. Co., 59 N. Y. 557, the question presented was, whether the statements and answers of the assured, in his application, were warranties or merely representations, and the court held them representations, basing its holding partly on the ground of "the character of the minute inquiries made of the applicant, and the extravagance of supposing, as to many of them, that any one would undertake to answer them categorically, as required, and warrant the answers, or, at most, express an opinion concerning them." *Ib.* 569. We think this language applicable to the very numerous questions asked the assured in this case. The case cited is referred to in Continental Life Ins. Co. v. Rogers, 119 Ill. 472, 474, but mistakenly cited as being in 55 N. Y.

In the Rogers case the applicant warranted, in terms, his statement to be true; but, next after the warranty, this language occurred: "And any policy which may be issued upon this application, by the Continental Life Insurance Company, and accepted by the applicant, shall be so issued and accepted upon the express condition that, if any of the statements or *representations* in this application are, in any respect, untrue, or, if any violation of any covenant, condition or restriction of the said policy shall occur, on the part of the party or parties signing the application, then the said policy shall be null and void." *Ib.* 479-80. The court comments on the numerous questions asked the applicant, saying: "Turning our eyes to the policy, we find the assured

is exhaustively examined with respect to his afflictions, through life, in the way of diseases. Each disease is specifically pointed out, and called to his attention in a separate interrogatory. Question follows question, until the number of diseases brought in review amount altogether to twenty-four, which is followed by just that number of categorical answers. Some of the diseases in this imposing list are of such a character that most persons afflicted with them would naturally shrink from giving publicity to the fact, and, consequently, no proof could be made after their death, one way or the other.''

In the present case, instead of twenty-four questions as to ailments, there are about sixty-eight, and the appellant was required to answer whether he had ever had any one of the ailments mentioned. The trial court correctly held that the statements and answers of the assured were merely representations, and in sustaining demurrers to pleas drafted on the theory that they were warranties, and that the burden was on appellant to prove that the representations were false and known so to be by the assured when he made them. The appellee put in evidence the policy, the receipt for the first premium, which was all that was due prior to the death of the assured, proved that proofs of death were furnished to appellant, and rested. This evidence made out a *prima facie* right of recovery, which the appellant was bound to meet by affirmative action; otherwise appellee was entitled to judgment. Continental Life Ins. Co. v. Rogers, 119 Ill. p. 474.

Appellant's sole contention of fact is that the assured, prior to making his application, had, to his knowledge, bronchitis, and gall stones, or one of these diseases.

Dr. Ochsner, called by appellant, testified that he treated the assured for bronchitis in the years from 1897 to 1901, both inclusive; that he had two or three attacks each year; that the ordinary attack, except the

last one, which preceded his death, lasted only two or three days, and that he was never, to the knowledge of the witness, confined to his bed all day. On cross-examination the witness testified that there are three kinds of bronchitis—acute, subacute and chronic; that acute bronchitis is not always serious, and is not serious when of short duration, with mild symptoms and the absence of severe prostration of the patient; that a cold may be bronchitis and often is, and that the attacks of bronchitis suffered by the assured, except the one next preceding his last illness, were not of a serious character, and that, with the same exception, the assured never had bronchitis in any other sense than as we speak of a cold. This witness also testified that he had no knowledge of the assured having gall-stones.

Almeda Peterson, a trained nurse, testified that in the fall of 1900 and the spring of 1901 she attended the assured for a heavy cold; that he was not sick for any length of time and he could not be said to have been seriously ill, and that, while she attended him, he said he had suffered from gall stone attacks, and that they were very severe, and the perspiration would stand out over his body, and he would suffer agony. On cross-examination she testified: "With reference to the attacks of gall stones, he said the attacks were severe, that it could cause perspiration to start from him. I cannot remember that he used the word severe himself, but I do remember that he said they were hard attacks. I am of impression that he said they were terrible. I do not remember the exact words that he used, but I got the impression that the attacks were all severe."

The following witnesses were called by appellee in rebuttal and testified, in substance, as follows:

Dr. Ochsner: "I attended Mr. Miller from 1897 to his last illness."

Q. "Did he, during that time, to your knowledge, have gall stones?"

A. "Not to my positive knowledge. I treated Mr. Miller for a pain in the region of the gall bladder, on one occasion in the summer of 1897." On cross-examination the witness testified that the symptoms of gall stones are very numerous and various, one symptom being a severe pain in the region of the liver, and that Mr. Miller had a pain in the region of the liver.

Elizabeth Miller Link, daughter of Mr. Miller, deceased, testified that at Cape Girardeau, Missouri, the deceased had a severe pain, and perspiration came out on him, but the pain lasted only a few minutes.

The foregoing is substantially all the evidence bearing on the question whether the assured, before his application, had bronchitis or gall stones. We think the jury were fully warranted in finding that he had not any serious attack of bronchitis, and that he did not know, at the time of his application, that he had had bronchitis at all. Dr. Ochsner, who attended him for about four years when he required medical attendance, and who treated him for a pain in the region of the gall bladder, having testified that the assured had not gall stones, to his knowledge, we cannot say that the jury were not warranted in finding that the assured had not gall stones before making his application. The only evidence to sustain the contention that the assured had gall stones is that of Miss Peterson, that in the fall of 1900 or spring of 1901, which was more than five years before the trial, the assured told her that he had suffered from attacks of gall stones. We think it not improbable or surprising that the jury did not place much confidence in the remembrance of the witness of a casual conversation with a sick man, which occurred so long before the trial. Counsel for appellee contends that the statement of the deceased as to gall stones, if any, is not binding on the appellee, as she took title directly from appellant, and, therefore, is not in privity of title with the assured, and, also, that the evidence was hearsay, and, in the absence of other evidence, inadmissible, citing 1 Wig-

more on Evidence, sec. 266, p. 333, and many cases which seem to sustain this view.

In 19 Am. & Eng. Ency. of Law, p. 107, 2nd ed., the author says: "Declarations of the insured, uttered some time before the making of the application, and not shown to have been part of the *res gestae* of any acts or facts, as for instance, such as indicated a diseased condition of the insured, which the declarations tended to explain, constitute mere hearsay, and, as such, are not admissible against the beneficiary, to show a breach of warranty."

Morally considered, the defense on the merits borders on the absurd. The assured, in his medical examination, said that he had had pneumonia, a very dangerous and, in very many cases, a fatal disease, and which caused the death of the assured; yet appellant accepted his application. Had he also stated that he had had bronchitis or gall stones, his application would, undoubtedly, have been accepted. Why? Because the object of the medical examination was to ascertain whether he was then in good health and physically sound, and that he was so was presumably reported to appellant by the medical examiner. The appellant evidently, is not nearly so technical or particular in passing on applications, assuming risks and receiving premiums as in defending against liabilities.

We do not think the verdict of the jury manifestly against the weight of the evidence. Therefore, we cannot lawfully interfere with it on that ground.

Appellant's counsel claim that the court erred in instructing the jury, by modification of appellant's instructions, that the appellant must show that the attacks of bronchitis were of a serious character. We have already called attention to the fact that the assured, in answer to the question whether he had, at any time, suffered "from chronic cough," etc., said, "Having carefully read and fully understanding the foregoing questions, I declare that I have never had any of the diseases mentioned, or any other serious

ailment except pneumonia," and we are of opinion that the words "or any other serious ailment" qualify the answer so that it refers only to serious ailments.

In Moulor v. Am. Life Ins. Co., 111 U. S. 335, the fourteenth question asked the applicant was: "Is there any circumstance which renders an insurance on his life more than usually hazardous, such as place of residence, occupation, physical condition, family history, hereditary predispositions, constitutional infirmity, or other known cause, or any other circumstance of information, with which the company ought to be made acquainted?" The answer was no. *Ib.* 338. In respect to the question the court say (p. 344) : "Beyond doubt the phrase 'other known causes,' in the fourteenth question, serves the double purpose of interpreting and qualifying all that precedes it in the same clause or sentence," and held that the applicant was only required to state what was within his personal knowledge.

In Connecticut Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 257, the trial court refused to instruct the jury that if they "believed, on the evidence, that the insured ever had an affection of the liver, before the presentation to the defendant of the application for insurance, the policy is void, and the defendant is entitled to a verdict." It was claimed that the refusal of the instruction was error. The court say: "It was not contemplated that the insured could recall, with such distinctness as to be able to answer categorically every instance during his past life, or even during his manhood, of accidental disorder or ailment affecting the liver, which lasted only for a brief period, and was unattended by substantial injury or inconvenience, or prolonged suffering. Unless he had an affection of the liver that amounted to disease, that is, of a character so well defined and marked as to materially derange, for a time, the functions of that organ, the answer that he had never had

the disease called affection of the liver was a fair and true one.''

We do not think the instructions erroneous, as claimed by counsel. It is also claimed by appellant's counsel, that the court erred in instructing the jury in regard to the proofs of death, that they must not take the physician's statements therein, if any, "as evidence tending to prove facts injurious to the case of the plaintiff, in this action." The reason given by counsel for this objection is, that the proofs of death contained the physician's statement that the cause of death was pneumonia, and that the evidence showed a close connection between bronchitis and pneumonia. The proofs of death were introduced by the appellee as evidence that appellee had complied with the condition precedent to furnish such proofs to appellant. But, conceding that the proofs were in evidence generally, and for all relevant ends and legitimate purposes, we do not think that the appellant was prejudiced by the instruction, or that the giving it was error which would warrant a reversal.

Our conclusion, from inspection of the whole record, is, that substantial justice has been done, and we find no reversible error in the record. Therefore, the judgment in each of the above entitled appeals will be affirmed.

*Affirmed.*