# PRUDENTIAL INSURANCE COMPANY OF AMERICA *v.* LEAR.*

---

LIFE INSURANCE; RELEASE; CONTRACTS; TRIAL; PHYSICIANS.

1. Where the defense to an action on a policy of life insurance is that the deceased released in writing the company from liability a few days before her death, and the evidence is conflicting as to her condition when she signed the paper purporting to be a release, and as to her capacity to understand what she was doing, two witnesses testifying, in effect, that she was very weak and incapable of understanding the nature of her act, the question of whether the paper signed constitutes a release is one for the jury.  (Following *Rockwell* v. *Capital Traction Co.* 25 App. D. C. 98.)

2. Statements of the insured in an application for life insurance will not be construed to be warranties, so that if untrue the policy will be void, although the application expressly declares that all statements in it shall be warranties, and, if untrue, shall avoid the policy, where the policy contains provisions inconsistent with such interpretation, such as that the policy shall be incontestable within one year after its date if all premiums due shall have been paid; and that, if the assured makes misstatements as to age, the policy shall be adjusted in accordance with the correct age, and does not contain any provision expressly avoiding it in event of untrue statements in the application; but, under such circumstances, it will be held that the com-

---

*Insurance—Warranties*—As to when statements may be regarded as representations, although expressly denominated in the policy as warranties, see note to *Reppond* v. *National L. Ins. Co.* 11 L.R.A. (N.S.) 981.

pany did not require more than the utmost good faith on the part of the insured when she made her application.

3. It is the duty of counsel, in argument to the jury, to direct attention to specific evidence if he so desires; and it is not the duty of the court to instruct the jury regarding such evidence, unless he is requested to do so.

4. In view of sec. 1073, D. C. Code (31 Stat. at L. 1358, chap. 854), prohibiting physicians from disclosing any information, confidential in its nature, which they shall have acquired in attending a patient, without the consent of the patient or his legal representative, it is not error for the trial court, in an action on a policy of life insurance, to refuse to allow a physician who has testified generally as to the health of his patient during the period he had been her physician to answer questions propounded by defendant's counsel in regard to the nature of the disease with which the deceased suffered, its duration, and the cause of death.

5. The fact that the insured, in her application for a policy of life insurance, stated that she had not been "attended" by a physician except about two years before, while the evidence in the suit on the policy showed that she had "consulted" a physician during that period, will not defeat a recovery.

No. 1823.  Submitted February 19, 1908.  Decided April 7, 1908.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action on a policy of life insurance.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This action was based upon a policy of insurance issued by appellant, the Prudential Insurance Company of America, a corporation, to Harriet Wassem, by which appellant agreed to pay the appellee, Kathryn E. Lear, as beneficiary, $1,000 upon the death of the insured.  The policy was issued June 2, 1906, and, by its terms, was to be incontestable after one year if all due premiums thereon had been paid.  It also contained a provision that, should the age of the insured be misstated, the amount payable under the policy should be adjusted in accordance with her correct age.  The application, which was signed

by the insured and attached to the policy, contained the follow-
ing : "I hereby declare and warrant that I am in good health,
and am and always have been of sober and temperate habits,
that I have never had a serious illness or disease other than
diseases incident to childhood, except as stated above, and there
is no history of consumption or insanity in my family among
parents, brothers, sisters, uncles, or aunts, except as stated
above; and I further warrant that all the statements and an-
swers to the above question are complete and true, and that the
foregoing, together with these declarations, shall constitute the
application, and become a part of the application for insurance
hereby applied for; and it is agreed that the policy herein ap-
plied for shall be accepted subject to the privileges and provi-
sions therein contained, and said policy shall not take effect
until the same shall be issued and delivered by the said company,
and the first premium paid thereon in full, while my health is
in the same condition as described in this application."

The defendant produced the physician who, a few days prior
to the date of the issuance of the policy, examined Mrs. Wassem
for the company. The witness testified that he then asked her
questions concerning her health, and that she stated she was in
good health and had not been "attended" by a physician, except
about two years before an attack of malaria; that her an-
swers were reduced to writing by him, and that she signed the
paper containing them and the clause : "I hereby warrant that
the answers to these questions are true, and agree that they
shall form a part of the contract for insurance applied for."
The paper thereupon, without objection, was admitted in evi-
dence. Witness further testified that, when he examined the
insured, "she looked pretty fair," but that, upon the next occa-
sion when he saw her,—sometime about the middle of June,—
she looked very feeble; that she was then "at her place of busi-
ness at the National Museum." On cross-examination, witness
stated that when he examined the insured "she appeared in good
health for one of her age." She was then sixty-three.

The defendant also called Dr. Edward B. Behrend, who testi-
fied that "he was first *consulted* by Mrs. Wassem on October 20,

1905, and that he last saw her on August 29, 1906;" that he saw her on an average of once a week until the last month, when he saw her more frequently. He was asked the question: "Was the patient in good health?" and answered: "No, sir." Thereupon the witness was asked the following questions, all of which were excluded.

"What was the nature of the ailment or disease with which she was suffering, if you know?"

"What was the nature of the disease which you found her suffering with, or the infirmity, on October 20th, when you went there?"

"Was she suffering during the time from October 20, 1905, to August 29, 1906, with the same trouble you found in October, 1905?"

"Was the cause of her death the same trouble that you found on October 20, 1905?"

Mattie Long, a trained nurse and a niece of the insured, was then called by the defendant, and testified that she cared for her aunt for about six weeks in November and December, 1905, and that her aunt then had pernicious anemia; "that she had been sick off and on for a year and a half prior to her death;" that witness had been a trained nurse since 1900. On cross-examination witness stated that her aunt had simple anemia in November and December, 1905.

George S. Wainwright, appellant's superintendent in the District of Columbia, testified that he visited Mrs. Wassem about the 15th of August, 1906, for the purpose of withdrawing the policy here in issue; that he informed her the company had received information to the effect that she had made misstatements as to the condition of her health at the time of making the application for insurance; that the insured gave him the name of her physician, and instructed him to see her physician and let her know what he said; that witness saw her physician, and, on August 23, 1906, again interviewed insured, who expressed a willingness to surrender her policy upon return of the amount of

premium paid; that a search was made for the policy, but it could not be found; that the insured thereupon signed the following paper:

Aug. 23, 1906.

To the Prudential Insurance Co.,
Newark, N. J.

Gentlemen:—

I have learned that, in giving my answers to the application for insurance, I made some misstatements to the agent and examiner. Knowing this voids my policy, I am willing to accept a return of premium paid ($91.41) and return policy, relinquishing all claims under the same for myself and beneficiary, as soon as the policy which is now in the possession of my niece, who is out of the city, can be forwarded to me.

(Signed) Insured, Harriet Wassem.
Witness:
Mrs. W. Avery.
Witness:
G. S. Wainwright.

On cross-examination, witness testified that the insured, upon the occasion when she signed the release, was propped up in bed, but that she appeared conscious and seemed to know what she was about.

Alva G. Avery, another niece of the insured, testified that she was present upon the occasion when her aunt signed the release, and read it over to her aunt, who voluntarily signed it.

In rebuttal, plaintiff called Mary J. Hullins, another niece of the insured, who testified she was in the house on the 23d of August, 1906, when her aunt signed the release, and saw her aunt immediately afterwards, and that she was then prostrated and did not at first recognize witness, but presently asked who it was that had just left the room. Witness told her that it was Mr. Wainwright, and that her aunt asked "Who is he?" and witness told her. Whereupon insured asked witness what he wanted there, and witness told her that he had gotten her to sign a paper; that the insured stated that she did not sign any

paper. Witness further testified that she had been sitting with her aunt every day, and that she had to be attended like a baby; that her illness commenced on July 28, 1906, and that she had worked up to that time; that she had kept boarders, had done her own work and the marketing, and her own washing, and had also worked at the museum; that her aunt was not ill in December, 1905; that she was then doing her work and also working at the museum a part of the time.

Another niece, Martha D. Lear, who was in the house the day the release was signed, gave testimony tending to corroborate the testimony of the last witness.

Plaintiff also called Dr. J. R. Tubman in rebuttal, who testified "that simple amenia is a symptomatic disorder of the blood," and is not a serious complaint; "that simple anemia follows most any disease; that the duration of pernicious anemia is from one to six months;" that, in his opinion, it would not have been possible for a person suffering from pernicious anemia on the 28th of May to work up to the 26th of July; that simple anemia is a very common disease, while pernicious anemia is a very rare disease.

*Mr. Walter V. R. Berry, Mr. Benjamin S. Minor,* and *Mr. Hugh B. Rowland* for the appellant.

*Mr. Anson S. Taylor, Mr. John E. Taylor,* and *Mr. Hayden Johnson* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

There being conflicting evidence as to the condition of the insured when she signed the paper purporting to release the company from liability under the policy, and as to her capacity to understand what she was doing, the court properly submitted the question to the jury. It is not controverted that the release was obtained within a few days of her death. Two witnesses testified, in effect, that she was very weak and incapable of understanding the nature of her act when she signed the

paper. Clearly it was for the jury to say whether, in the cir-
cumstances, the paper she signed constituted a release. *Rock-
well* v. *Capital Traction Co.* 25 App. D. C. 98.

The second assignment of error relates to the refusal of the
court to instruct the jury, as matter of law, that the statements
and representations contained in the application were warran-
ties; and that, if any of said statements and representations were
untrue, their verdict should be for the defendant. We think this
case ruled by *Moulor* v. *American L. Ins. Co.* 111 U. S. 335, 28
L. ed. 447, 4 Sup. Ct. Rep. 466. In that case the application
contained a paragraph in which the applicant stated: "It is
hereby declared and warranted that the above are fair and true
answers to the foregoing questions; * * * and that, if
there be, in any of the answers herein made, any untrue or
evasive statements, or any misrepresentations or concealment of
facts, then any policy granted upon this application shall be
null and void, and all payments made thereon shall be forfeited
to the company." The insured, at the date of his application,
was afflicted with one of the diseases which, in his answers, he
had stated he did not have. The court ruled, after a careful
consideration of the application, upon the faith of which the pol-
icy was issued, that, notwithstanding the clause above quoted,
the company "did not require the insured to do more, when ap-
plying for insurance, than observe the utmost good faith, and
deal fairly and honestly with it, in respect of all material facts
about which inquiry is made." The court reached this conclu-
sion because, taken together, the policy and application might
be so construed. In the present case it will be observed the ap-
plication does not declare the contract null and void if the
answers of the insured to the questions propounded to her are
in any respect untrue; neither is there anything in the policy to
that effect. The policy, however, does contain paragraphs in-
consistent with the interpretation insisted upon by appellant.
However untrue the representations of the insured, it is ex-
pressly provided "that the policy shall be incontestable one
year after its date if all due premiums shall have been paid."
This provision lends itself to the interpretation that the com-

pany intended to fix a time limit of one year within which it might ascertain whether an application had been made fraudulently to obtain a policy, and that if, at the expiration of one year, no evidence to that effect had been obtained, the company waived any further right to interpose such a defense. It would be a harsh interpretation of the policy to hold recovery barred because the insured, within one year from death, innocently made statements in reference to her health which were not true, and permit recovery in a case where a year and a day had elapsed since the making of an application containing statements known to be false when made.

The provision that, if the insured makes a misstatement as to age, the policy shall be adjusted in accordance with the correct age, adds cogency to the argument that the utmost good faith is all the company intended to require. It is, of course, impossible for a person to state accurately his age except from hearsay. Notwithstanding that he has already "declared and warranted" his age, the policy, recognizing that he must rely upon others in making his answer, provides that, if his age is incorrectly stated, the policy shall be adjusted in accordance with his correct age. The absence of any provision voiding the policy in the event of untrue answers to questions propounded the insured, the fact that the policy would be incontestable, even for fraud, after one year, and the provision with respect to a misstatement of age, lead us to the conclusion that the company did not require more than the utmost good faith on the part of the insured when she made her application.

In the next assignment of error it is contended that the court should have instructed the jury "that the statements made to the medical examiner form a part of the *res gestæ,* and could be taken into consideration by them in determining whether they were made for the purpose of deceiving appellant company." These statements were admitted without objection, and were before the jury. The court, upon the request of appellant, gave the following special instructions: "If the jury believe from the evidence that the insured was in bad health at the time of making application for the policy of insurance sued on, and,

had been in bad health for some time prior thereto, and concealed such condition of health from the insurance company for the purpose of obtaining the policy sued on, then your verdict should be for the defendant."

It was the duty of appellant's counsel, in argument, to direct the jury's attention specifically to this evidence, if they so desired, and not the duty of the court. The court's charge as given was sufficient.

It is next urged that the court erred in refusing to allow insured's physician to answer the questions propounded to him by appellant in regard to the nature of the disease he found to exist in October, 1905, the duration of said disease, and the cause of death. Sec. 1073 of the Code ([31 Stat. at L. 1358, chap. 854]) provides that "in the courts of the District of Columbia no physician or surgeon shall be permitted, without the consent of the person afflicted, or of his legal representatives, to disclose any information, confidential in its nature, which he shall have acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity," with certain stated exceptions. We think no error was committed in excluding these questions, since the information which it was sought to have disclosed was "confidential in its nature" and obtained in a professional capacity. Manifestly the statute was designed to prevent a disclosure by a physician of just such information as was attempted to be elicited by these questions. The witness had already, without objection, testified generally as to the health of the insured during the period he had been her physician. To state the nature of the disease with which she suffered he would have been compelled to disclose information highly confidential in its nature and which came to him in his professional capacity, and hence within the inhibition of the law.

The contention that, on the whole evidence, the jury should have been instructed to find for appellant, is without merit. The insured was not asked when she last consulted a physician. She was asked when she "was last *attended* by a physician," and her answer was responsive to the question propounded.

D. C.]                      Syllabus.

The evidence disclosed that she continued to work until about July 26, 1906, and the company's physician testified that "she appeared in good health for one of her age" when she applied for a policy.   There was no direct evidence that she knew, or even suspected, that she had anemia, pernicious or otherwise, when the policy was issued, and we think the question of her good faith was properly left to the jury.

The judgment is affirmed, with costs.           *Affirmed.*