2023 IL App (1st) 220723

No. 1-22-0723

Opinion filed September 29, 2023

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| NANCY MALEK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2021 L 008016 |
| | ) | |
| CHUHAK & TECSON, P.C., | ) | Honorable |
| | ) | Michael F. Otto |
| Defendant-Appellee. | ) | Judge presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Lyle and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Nancy Malek appeals the dismissal of her complaint against her now ex-husband's

lawyer, defendant Chuhak & Tecson, P.C., alleging that the firm aided and abetted a fraudulent

transfer of $13.6 million. This case raises two main issues on appeal: first, did the trial court err in

dismissing the case as time-barred, and second, did plaintiff release her claim? For the reasons

below, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     In early 2009, Michel Malek and plaintiff, then married, separated. Around the same time,

defendant began providing legal services to Michel Malek. Among these legal services was the

allegedly fraudulent creation of backdated documents to justify Michel Malek's transfer of $13.6 million to his mother in Lebanon on February 27, 2012. Over two years later, on May 12, 2014, plaintiff filed a petition for the dissolution of marriage against Michel Malek. During discovery in the dissolution proceedings, plaintiff subpoenaed defendant for records related to its representation of Michel Malek. Defendant supplied plaintiff with those records on December 10, 2015. Despite this disclosure, plaintiff claims that she did not learn of defendant's involvement in the $13.6 million transfer until October 5, 2017, when an attorney gave her a memorandum detailing these facts. On September 20, 2019, plaintiff filed a *pro se* complaint against defendant. After retaining counsel in that case and amending her complaint, plaintiff voluntarily dismissed the action. Two years later, plaintiff filed this action against defendant asserting the same claims as her previous lawsuit. Subsequently, on April 22, 2022, the circuit court dismissed plaintiff's case as untimely. At roughly the same time, on March 25, 2022, the judge in the Malek divorce case entered an amended judgment of dissolution of marriage. Plaintiff timely filed a notice of appeal on May 20, 2022.

¶ 4                                II. ANALYSIS

¶ 5                           A. Statute of Limitations

¶ 6     Plaintiff first argues that the trial court erred in dismissing her case as barred by the statute of limitations because she did not know and could not have known of defendant's wrongful conduct until October 5, 2017. She claims that defendant's wrongful conduct was "inherently unknowable" until that time because she is a layperson and cannot be expected to be on notice of potentially sophisticated causes of her injuries. Instead, she contends that there is an open factual question that should be resolved in the trial court regarding when she knew or should have known

of defendant's involvement in her injury. We review *de novo* a trial court's dismissal of a case as untimely. *Sauer v. Chicago Transit Authority*, 2023 IL App (1st) 220791, ¶17.

¶ 7    The Code of Civil Procedure requires litigants to bring actions for damages against attorneys "within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b). Under the discovery rule, plaintiffs must exercise reasonable diligence in investigating potential claims. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981). Failure to reasonably investigate will not save a claim even if the plaintiff never had actual knowledge of the conduct giving rise to the litigation. Instead, "the limitations period commences when the party possesses enough information concerning her injury to apprise a reasonable person to the need for further inquiry to determine whether a legal wrong has been committed." *Young v. McKiegue*, 303 Ill. App. 3d 380, 390 (1999). Generally, this determination is a question of fact "unless the facts are undisputed and only one conclusion may be drawn from them." *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981).

¶ 8    Here, plaintiff was on inquiry notice of the injury and wrongful conduct of defendant at least in December of 2014, when plaintiff's divorce attorney filed a motion on her behalf that alleged a scheme devised by Michel Malek to deplete the marital estate prior to the divorce. At that point, plaintiff was aware that she had been injured, and she was aware that that injury was the result of her then-husband attempting to limit the marital property to which she was entitled. Although plaintiff may not have known that defendant was involved in orchestrating this injury, plaintiff's knowledge that she was injured was sufficient to start the clock on the statute of limitations. See *Janousek v. Katten Muchin Roenman LLP*, 2015 IL App (1st) 142989, ¶ 21

(finding that "even though [Janousek] may not yet have known that defendants' representation was partly responsible and that their conduct gave rise to a cause of action, the statute of limitations began to run because Janousek did have knowledge of the injury and that his injury was wrongfully caused."); *Nelson v. Padgitt*, 2016 IL App (1st) 160571, ¶ 17 (holding that "Nelson knew he had been injured when he was fired and was informed that he was being terminated under the employment agreement. Even if Nelson did not yet know that Padgitt had been negligent in negotiating his employment agreement, he was on notice of the problem and had a duty to inquire further."). According to plaintiff, defendant colluded with Michel Malek to defraud plaintiff for at least four years from 2009 until 2013. Plaintiff's complaint alleges that defendant helped facilitate almost every step Michel Malek took during that period. Defendant's actions were inextricably intertwined with Michel Malek's conduct, and an investigation into one should necessarily have revealed the involvement of the other. See *Katz v. Hartz*, 2021 IL App (1st) 200331, ¶ 33 (holding that whether the statute of limitations had begun to run was a question of fact where "a reasonable investigation" into one cause of the plaintiff's injury "might not reveal the other.") Moreover, while this finding alone would be sufficient, plaintiff herself admits that the investigation into Michel Malek *did* reveal defendant's involvement.

¶ 9    Plaintiff acknowledges in her complaint that "[o]n December 10, 2015, C&T produced to Nancy documents detailing the events alleged in this Complaint, along with documents needed to discover documents created by C&T had been backdated." Despite this, plaintiff maintains that she "could not have known that her injuries might have been caused by defendant until October 5, 2017," when she received a memorandum from an attorney advising her that defendant may have injured her. Not so. Plaintiff needed only to read the documents that defendant provided to her—

documents which plaintiff subpoenaed for the purpose of investigating wrongdoing—to learn of the events that gave rise to the case before us. This is not a case where the information is "inherently unknowable" as plaintiff suggests; plaintiff simply failed to take the necessary steps in the allotted time to learn the information. See *Racquet v. Grant*, 318 Ill. App. 3d 831, 837 (2000) ("Plaintiffs may not rely on their own unreasonable delay in learning that they may have been wrongfully injured."). Plaintiff cannot avoid the statute of limitations by pleading ignorance when a minimal investigation would have revealed all the information she needed.

¶ 10    Further, plaintiff's argument that our case law precludes dismissal is unpersuasive; each case plaintiff cites is clearly distinguishable and no case undermines the analysis above. Plaintiff first equates her position to the position of the plaintiff in *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126. But the cause of the plaintiff's injury in *Mitsias* was genuinely unknowable. There, Mitsias filed a medical malpractice claim against a surgeon who operated on her shoulder. *Mitsias*, 2011 IL App (1st) 101126, ¶ 2. The doctor installed a "pain pump" in the plaintiff's shoulder to administer an anesthetic throughout the procedure. *Id.* ¶ 6. Roughly six years after the surgery, researchers discovered that there may be a connection between the use of "pain pumps" and the plaintiff's condition. *Id.* ¶ 2. It would not have mattered how thorough the plaintiff's investigation had been; she could not have discovered the claim because it was "yet unknown to science." *Id.* ¶19. No one, not even the defendant who caused the injury, knew of the problem. Here, on the other hand, all the information that plaintiff needed to learn about defendant's alleged wrongdoing existed and was in plaintiff's possession. This situation was not one where plaintiff was incapable of discovering the misconduct but rather a situation where a reasonable investigation would have brought such wrongdoing to light.

¶ 11     Plaintiff next argues that this case is like *Young*, where the plaintiff's husband passed away mysteriously after being admitted to the hospital for ten days. *Young*, 202 Ill. App. 3d at 383. The plaintiff sought an attorney who told her to request a copy of the medical records for the incident. *Id.* at 384. She received the medical records in December of 1993 and then sent them to two doctors. *Id.* The first doctor reported his findings in August of 1994, and the second doctor reported his findings in February of 1995. *Id.* The court determined that the plaintiff was on notice as a matter of law in August of 1994 but that there was a question of fact as to whether the plaintiff was on notice when she received the documents in December of 1993. *Id.* at 389. The court concluded that simply being "suspicious that her injury was wrongfully caused" did not mean that the plaintiff knew or reasonably should have known of the injury. *Id*. at 390. Further, the court found that "[w]hat plaintiff knew or reasonably should have known after viewing the medical records available and the factual circumstances presented" was a question for the trier of fact. *Id.*

¶ 12     Conversely, here, plaintiff did not only suspect that her injury was wrongfully caused, she explicitly alleged in her dissolution proceedings that her injury was wrongfully caused. This put her on notice to investigate all potential causes of her injury. Additionally, unlike *Young*, where there was an open question regarding what the plaintiff may have understood from the medical reports, here, plaintiff was represented by an attorney who was already making sophisticated legal arguments regarding Michel Malek's financial activities. Plaintiff's lawyer was equipped to provide plaintiff with enough information to place her on notice, and we impute the knowledge of the lawyer to her client. *Williams v. Dorsey*, 273 Ill. App. 3d 893, 898 (1995) ("[I]t is well-settled that notice to an attorney is notice to the client and knowledge of an attorney is knowledge of, or

imputed to the client, notwithstanding whether the attorney has actually communicated such knowledge to the client" (internal quotation marks omitted)).

¶ 13    Plaintiff next relies on *Nolan* and *Jackson Jordan, Inc. v. Leydig, Voit & Meyer*, 158 Ill. 2d 240 (1994) for the proposition that, where there are various points in time when a jury could reasonably conclude that the plaintiff had sufficient information for the statute of limitations to begin running, it is error to find a suit untimely as a matter of law. While this is an accurate summary of the law, it is irrelevant to this case. Here, plaintiff had sufficient information for the statute of limitations to begin running in December 2014. There is no need for the question to reach the jury because the undisputed facts allow for only one conclusion: plaintiff's action is barred by the statute of limitations. *Nolan*, 85 Ill. 2d at 171.

¶ 14    Finally, plaintiff argues that *Racquet* prevents us from concluding that the statute of limitations had run. In *Racquet*, the plaintiffs had been represented by the defendants in a lawsuit. *Racquet*, 318 Ill. App. 3d at 832. The plaintiffs lost the suit, allegedly due to negligent representation, and missed their opportunity to appeal the decision. *Id.* However, the plaintiffs claimed that they only discovered the defendants' malpractice after consulting with a lawyer to represent them on the other party's appeal. *Id.* at 832–36. The court determined that there were open factual questions as to the malpractice claims for two reasons. First, prior to consulting with a lawyer about the defendants' representation, the plaintiffs could not have known of malpractice because "as lay people, plaintiffs were presumptively unable to discern on their own any misapplication of legal expertise." *Id.* at 837 (citing *Goodman v. Harbor Market, Ltd.*, 278 Ill. App. 3d 684, 689-90 (1995)). That is, because every case involves at least one party that is unsatisfied with the result, "an adverse judgment alone" is not sufficient to place a plaintiff on

notice of malpractice. *Id.* (quoting *Butler v. Mayer, Brown & Platt*, 301 Ill. App. 3d 919, 924 (1998)). Second, there was a factual dispute regarding when the plaintiff's new lawyer knew about the failure to appeal. *Id.* at 838.

¶ 15 Here, plaintiff is not alleging negligent representation; she is alleging that a law firm aided and abetted in fraud. Where the plaintiffs in *Racquet* would have needed to "hire a second professional to observe the work of the first" to discover that they had been injured, (*Goodman*, 278 Ill. App. 3d at 690 (quoting *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 491 P.2d 421, 428 (Cal. 1971)), plaintiff here was already aware of her injury. The fact that she did not realize that her injury may have been caused in part by defendant does not save her claim. Moreover, even if we were to read the language from *Racquet* to apply here, plaintiff would still fail because she was represented by an attorney who had the opportunity to "observe the work" of defendants. *Id.* Furthermore, there is no factual dispute here regarding when plaintiff's attorney filed the motion that placed plaintiff on notice nor when she received the discovery documents containing all the information that she needed.

¶ 16 In essence, plaintiff asks us to pull pieces from a variety of cases that are factually and legally inapposite to complicate an otherwise straightforward case. As a matter of law, plaintiff had sufficient evidence to know of her injury on December 5, 2014, and yet she did not file suit until 2019, well beyond the two-year limitations period.

¶ 17                                              B. Release

¶ 18 Defendant argues that there is an additional basis on which to affirm the dismissal of plaintiff's complaint: she released her claims. After plaintiff filed the lawsuit before us, the trial court in plaintiff's divorce proceedings entered an amended judgment. Included in that amended

judgment is a provision labeled a covenant not to sue. If this provision released all claims against defendant, plaintiff's claim would be barred. See *Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 255 Ill. App. 3d 790, 799 (1993).

¶ 19    Plaintiff argues that the substance of paragraphs fourteen and fifteen of the judgment were not included in the marital settlement agreement and that the judgment is "substantively unconscionable." Essentially, plaintiff seems to be attempting to collaterally attack the judgment in the divorce proceedings. However, "once a court of competent jurisdiction renders a judgment, it is not open to contradiction or impeachment in any collateral proceeding." *Village of Vernon Hills v. Heelan*, 2014 IL App (2d) 130823, ¶29. Plaintiff's avenue for relief from that judgment was "on direct appeal, or in one of the traditional collateral proceedings now defined by statute." *Malone v. Cosentino*, 99 Ill. 2d 29, 32-33 (1983). This court is therefore bound by the judgment of the divorce court.[1]

¶ 20    The remaining question then is whether paragraph fifteen of the judgment, the "covenant not to sue," acts as a release of this case. Under Illinois law, a "release extinguishes a cause of action," meaning that a release would dispose of an active case. *Pate v. City of Sesser*, 75 Ill. App. 3d 233, 236-37 (1979). A covenant not to sue, on the other hand, "affects only the right to bring suit and not the cause of action itself." *Id.* at 237. Thus, if paragraph fifteen is a "release," then the

---

[1] Plaintiff also argues that defendant failed to raise this issue in the trial court and therefore should be barred from raising it here. See *Continental Concrete Pipe Corp. v. Century Road Builders, Inc.*, 195 Ill. App. 3d 1, 9-10 (1990) (holding that "fairness to the trial court as well as to the parties demands that a reviewing court consider the record that was before the trial court and not what has been added in the reviewing court."). However, the release suggests that the issues presented in the trial court no longer exist, rendering the case moot because it is "impossible for the reviewing court to grant the complaining party effectual relief." *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 28. Mootness is a jurisdictional question which we may review *sua sponte*. *Davis v. City of Country Club Hills*, 2013 IL App (1st) 123634, ¶ 10.

trial court must be affirmed, but if paragraph fifteen is simply a "covenant not to sue," then it has no effect on the current litigation. In determining whether a provision is a release or a covenant not to sue, "the intention of the parties is controlling ***." *Id.* The use of the phrases "covenant not to sue" or "release" is not determinative. Instead, "[w]hether a document is construed as a release, an accord and satisfaction or a covenant not to sue depends upon the words used, the amount paid, the substance of the agreement and the intention of the parties." *Brown v. Timpte Inc.*, 137 Ill. App. 3d 1053, 1057 (1985).

¶ 21 The paragraph in question reads,

Covenant Not to Sue: To the fullest extent permitted by law, and except as otherwise provided herein, Nancy does hereby forever relinquish, release, waive and release *any and all claims* against Dr. Michel Malek, Marc Malek, Najla Malek, *Chuhak & Tecson, P.C.* and Micheline Harb (the "Third Parties") as of the signing of the Amended Judgment, including, but not limited to claims for fraud, conversion, intentional infliction of emotional distress, breach of contract, and unjust enrichment. Nancy further covenants and agrees for herself, her heirs, personal representatives and assigns, that they shall not at any time hereafter sue the Third Parties, their estate, heirs, personal representatives, grantees, devisees or assigns, for the purpose of enforcing any rights and claims specified to be released, waived or relinquished under this Amended Judgment; and each party further agrees that in the event any suit shall be commenced, this release, when pleaded, shall be and constitute a complete defense thereto. (Emphasis added.)

¶ 22 This provision can be broken into two parts. In the first part, plaintiff agreed to "release any and all claims" against, among others, our defendant. The language suggests these are

currently held legal claims. Further, the paragraph makes no mention of any intent on plaintiff's part to reserve the right to the suit before us nor to any suit in the future. See *Porter v. Ford Motor Co.*, 96 Ill. 2d 190, 193 (1983) (noting that "if a release contained an express reservation of rights against others it would be interpreted to be a covenant not to sue ***."). The provision is an unambiguous release of all claims held against defendant at the time of the signing of the judgment on March 25, 2022, when this case was actively being litigated. And the second part of the paragraph bears this reading out. There, plaintiff covenanted not to sue defendant "at any time hereafter." If the first part of the paragraph had been intended as a covenant not to sue, the latter half of the paragraph would become superfluous. See *Minnesota Mutual Life Insurance Co. v. Link*, 131 Ill. App. 89, 94 (1907) (quoting *Morris v. Southworth*, 154 Ill. 118, 125 (1894)) ("the rule is that, in construing a contract, the construction must be such that 'if it can be prevented, no part of it, either in words or sentences, shall be regarded as superfluous or void.' "). This means that the clause is both a covenant not to sue and a release. Therefore, plaintiff released the claim that serves as the basis for this action.

¶ 23    In light of our conclusion that plaintiff's claims are time-barred and released, we need not reach the other issues she raises on appeal.

¶ 24                                III. CONCLUSION

¶ 25    The judgment of the circuit court of Cook County is affirmed.

¶ 26    Affirmed.

---

***Malek v. Chuhak & Tecson, P.C.*, 2023 IL App (1st) 230723**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021-L-8016; the Hon. Michael F. Otto, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Amir R. Tahmassebi and Connor J. Whitting, of Konicek & Dillon, P.C., of Geneva, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michael J. Flaherty and Christopher L. Gallinari, of Flaherty & Youngerman, P.C., of Chicago, for appellee. |

---