# MOULOR *v.* AMERICAN LIFE INSURANCE COMPANY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued March 11th, 1884.—Decided April 14th, 1884.

*Contract—Insurance—Exception—False Representations—Practice—Trial.*

Going to the jury upon one of several defences does not preclude the defendant, at a subsequent trial, from insisting upon other defences, involving the merits, which have not been withdrawn of record or abandoned in pursuance of an agreement with the opposite side.

A judgment will not be reversed upon a general exception to the refusal of the court to grant a series of instructions, presented as one request, because there happen to be in the series some which ought to have been given.

The principle reaffirmed, that when a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the court should lean against that construction which imposes upon the assured the obligations of a warranty.

An applicant for life insurance was required to state, categorically, whether he had ever been afflicted with certain specified diseases. He answered that he had not. Upon an examination of the several clauses of the application, in connection with the policy, it was held to be reasonably clear that the company required, as a condition precedent to a valid contract, nothing

more than that the insured would observe good faith towards it, and make full, direct and honest answers to all questions, without evasion or fraud, and without suppression, misrepresentation, or concealment of facts with which the company ought to be made acquainted.

In the absence of explicit stipulations requiring such an interpretation, it should not be inferred that the insured took a life policy with the understanding that it should be void, if, at any time in the past, he was, whether conscious of the fact or not, afflicted with the diseases, or any one of them, specified in the questions propounded by the company. Such a construction of the contract should be avoided, unless clearly demanded by the established rules governing the interpretation of written instruments.

This was an action upon a policy of insurance issued by the American Life Insurance Company of Philadelphia. By its terms the amount insured—$10,000—was payable to Emilie Moulor, the plaintiff in error, her executors, administrators, and assigns, within sixty days after due notice and satisfactory proof of interest and of the death of her husband, the insured, certain indebtedness to the company being first deducted. Upon the first trial there was a verdict for the plaintiff, which was set aside and a new trial awarded. At the next trial, the jury were peremptorily instructed to find for the company, and judgment was, accordingly, entered in its behalf. Upon writ of error to this court, that judgment was reversed upon the ground that, as to certain issues arising out of the evidence, the case should have been submitted to the jury. *Moulor* v. *Insurance Company*, 101 U. S. 708. At the last trial there was a verdict and judgment for the defendant. This writ of error is sued out to review the proceedings and judgment at that trial. The alleged errors and the facts relating to them fully appear in the opinion of the court.

*Mr. James Parsons* for plaintiff in error.

*Mr. Henry Hazlehurst* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

Upon the trial the plaintiff offered to show, by the testimony of witnesses, that at a previous trial, in 1875, the company went to the jury upon the single issue of an alleged breach of warranty, and did not seek a verdict upon the ground that the

insured had committed suicide. The offer was denied, and the action of the court thereon is assigned for error. The avowed object of the proof was to establish a waiver by the company of any defence founded upon that clause of the policy which declares that it shall be void in case the insured " die by his own hand." Undoubtedly, it was competent for the company to waive that or any other defence arising out of the conditions of the policy; but, clearly, its willingness, at one trial, to risk its case before the jury, upon a single one of several issues made, did not preclude it, at a subsequent trial, from insisting upon other defences, involving the merits, which had not been withdrawn of record, or abandoned in pursuance of an agreement with the plaintiff.

After the evidence was closed, the plaintiff submitted to the court a series of instructions, twenty-three in number, and asked that the jury be charged as therein indicated. As to instructions eleven, twelve, and nineteen, no ruling was made, nor was an exception taken for the failure of the court to pass upon them. The twenty-third, relating to the before-mentioned waiver of defence upon the ground of self-destruction, was rightly refused, because the evidence showed no such waiver. As to the remaining instructions, the court said, generally, that the propositions announced in them could not be affirmed, because they were either unsound or irrelevant. A general exception was taken to the "answers" of the court to the application to charge the jury as indicated in plaintiff's points. That exception, however, was too vague and indefinite. Some of the instructions submitted might well have been given, while others were abstract, or did not embody a correct exposition of the law of the case. Those instructions, although separately numbered, seem to have been presented as one request, and the exception was general as to the action of the court in respect of them all. If it was intended to save an exception as to distinct propositions embodied in the instructions, the attention of the court should have been directed to the specific points concerning which it was supposed error had been committed. As some of the plaintiff's instructions were properly overruled, we ought not, under the general exception taken, to reverse the

judgment merely because, in the series presented as one request, there were some which ought to have been given. *Indianapolis, &c., Railroad Company* v. *Horst*, 93 U. S. 295; *Rogers* v. *The Marshal*, 1 Wall. 644; *Harvey* v. *Tyler*, 2 Ib. 328; *Johnson* v. *Jones*, 1 Black, 210; *Beaver* v. *Taylor*, 93 U. S. 46; *Beckwith* v. *Bean*, 98 Ib. 266.

But there were certain parts of the charge to which exceptions were taken in due form. The rulings, the correctness of which is questioned by the assignments of error, will be presently stated. It is necessary that we should first ascertain the precise nature of the case disclosed by the evidence.

The seventh question in the application for insurance required the insured to answer Yes or No, as to whether he had ever been afflicted with any of the following diseases : Insanity, gout, rheumatism, palsy, scrofula, convulsions, dropsy, small-pox, yellow fever, fistula, rupture, asthma, spitting of blood, consumption, and diseases of the lungs, throat, heart, and urinary organs. As to each, the answer of the insured was, No.

The tenth question was: "Has the party's father, mother, brothers or sisters been afflicted with consumption or any other serious family disease, such as scrofula, insanity, &c. ?" The answer was, "No, not since childhood."

The fourteenth question was: "Is there any circumstance which renders an insurance on his life more than usually hazardous, such as place of residence, occupation, physical condition, family history, hereditary predispositions, constitutional infirmity, or other known cause, or any other circumstance or information with which the company ought to be made acquainted ?" The answer was, No.

To the sixteenth question, "Has the applicant reviewed the answers to the foregoing questions, and is it clearly understood and agreed, that any untrue or fraudulent answers, or any suppression of facts in regard to health, habits, or circumstances, or neglect to pay the premium on or before the time it becomes due, will, according to the terms of the policy, vitiate the same and forfeit all payments made thereon ?" the answer was, Yes.

At the close of the series of questions, nineteen in number,

propounded to and answered by the applicant, are the following paragraphs:

"It is hereby declared and warranted that the above are fair and true answers to the foregoing questions ; and it is acknowledged and agreed by the undersigned that this application shall form part of the contract of insurance, and that if there be, in any of the answers herein made, any untrue or evasive statements, or any misrepresentation or concealment of facts, then any policy granted upon this application shall be null and void, and all payments made thereon shall be forfeited to the company.

"And it is further agreed that if at any time hereafter the company shall discover that any of said answers or statements are untrue or evasive, or that there has been any concealment of facts, then, and in every such case, the company may refuse to receive further premiums on any policy so granted upon this application, and said policy shall be null and void, and payments forfeited as aforesaid."

The policy recites that the agreement of the company to pay the sum specified is "in consideration of the representations made to them in the application," and of the payment of the premium at the time specified; further, "it is hereby declared and agreed that if the representations and answers made to this company, on the application for this policy, upon the full faith of which it is issued, shall be found to be untrue in any respect, or that there has been any concealment of facts, then and in every such case the policy shall be null and void."

The main defence was that the insured had been afflicted with scrofula, asthma and consumption prior to the making of his application, and that, in view of his statement that he had never been so afflicted, the policy was, by its terms, null and void.

There was, undoubtedly, evidence tending to show that the insured had been afflicted with those diseases, or some of them, prior to his application; but there was also evidence tending to show not only that he was then in sound health, but that, at the time of his application, he did not know or believe that he

had ever been afflicted with any of them in a sensible, appreciable form.

Referring to the seventh question in the application, the court—after observing that the answer thereto was untrue, and the policy avoided, if the insured had been, at any time, afflicted with either of the diseases last referred to—instructed the jury: "It is of no consequence, in such case, whether he knew it to be untrue or not; he bound himself for its correctness, and agreed that the validity of his policy should depend upon its being so." Again: "That he, the insured, did not know he was then afflicted, is of no importance whatever, except as it may bear upon the question, Was he afflicted? If he was, his answer (for the truth of which he bound himself) was untrue, and his knowledge, or absence of knowledge, on the subject, is of no consequence." Further: "You [the jury] must determine whether the insured was at any time afflicted with either of the diseases named. If he was, his answer in this respect, was untrue, and notwithstanding he may have ignorantly and honestly made it, the policy is void, and no recovery can be had upon it." To so much of the charge as we have quoted the plaintiff excepted.

Assuming—as in view of the finding of the jury we must assume—that the insured was, at the date of his application, or had been prior thereto, afflicted with the disease of scrofula, asthma, or consumption, the question arises whether the beneficiary may not recover, unless it appears that he had knowledge or some reason to believe when he applied for insurance, that he was or had been afflicted with either of those diseases. The Circuit Court plainly proceeded upon the ground that his knowledge or belief as to having been afflicted with the diseases specified, or some one of them, was not an essential element in the contract; in other words, if the assured ever had, in fact, any one of the diseases mentioned in his answer to the seventh question, there could be no recovery, although the jury should find from the evidence that he acted in perfect good faith, and had no reason to suspect, much less to believe or know, that he had ever been so afflicted. If, upon a reasonable interpretation, such was the contract, the duty of the court

is to enforce it according to its terms; for the law does not forbid parties to a contract for life insurance to stipulate that its validity shall depend upon conditions or contingencies such as the court below decided were embodied in the policy in suit. The contracts involved in *Jeffries* v. *Life Ins. Co.*, 22 Wall. 47, and *Aetna Life Ins. Co.* v. *France, &c.*, 91 U. S. 510, were held to be of that kind. But, unless clearly demanded by the estab-lished rules governing the construction of written agreements, such an interpretation ought to be avoided. In the absence of explicit, unequivocal stipulations, requiring such an interpreta-tion, it should not be inferred that a person took a life policy with the distinct understanding that it should be void and all premiums paid thereon forfeited, if at any time in the past, however remote, he was, whether conscious of the fact or not, afflicted with some one of the diseases mentioned in the question to which he was required to make a categorical answer. If those who organize and control life insurance companies wish to exact from the applicant, as a condition precedent to a valid contract, a guaranty against the existence of diseases, of the presence of which in his system he has and can have no knowl-edge, and which even skilful·physicians are often unable, after the most careful examination, to detect, the terms of the con-tract to that effect must be so clear as to exclude any other conclusion.

In *National Bank* v. *Insurance Company*, 95 U. S. 673— which was a case of fire insurance, involving, among others, the question whether the statements as to the value of the property insured were warranties—it was said: "When a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the court should lean against that construc-tion which imposes upon the assured the obligation of a war-ranty. The company cannot justly complain of such a rule. Its attorneys, officers, or agents prepared the policy for the purpose, we shall assume, both of protecting the company against fraud, and of securing the just rights of the assured

under a valid contract of insurance. It is its language which the court is invited to interpret, and it is both reasonable and just that its own words should be construed most strongly against itself." See, also, *Grace* v. *American Insurance Company*, 109 U. S. 278, 282. These rules of interpretation, equally applicable in cases of life insurance, forbid the conclusion that the answers to the questions in the application constituted warranties, to be literally and exactly fulfilled, as distinguished from representations which must be substantially performed in all matters material to the risk, that is, in matters which are of the essence of the contract.

We have seen that the application contains a stipulation that it shall form a part of the contract of insurance; also, that the policy purports to have been issued upon the faith of the representations and answers in that application. Both instruments, therefore, may be examined to ascertain whether the contract furnishes a uniform fixed rule of interpretation, and what was the intention of the parties. Taken together, it cannot be said that they have been so framed as to leave no room for construction. The mind does not rest firmly in the conviction that the parties stipulated for the literal truth of every statement made by the insured. There is, to say the least, ground for serious doubt as to whether the company intended to require, and the insured intended to promise, an exact, literal fulfilment of all the declarations embodied in the application. It is true that the word "warranted" is in the application; and, although a contract might be so framed as to impose upon the insured the obligations of a strict warranty, without introducing into it that particular word, yet it is a fact, not without some significance, that that word was not carried forward into the policy, the terms of which control when there is a conflict between its provisions and those of the application. The policy upon its face characterizes the statements of the insured as representations. Thus, we have one part of the contract apparently stipulating for a warranty, while another part describes the statements of the assured as representations. The doubt, as to the intention of the parties, must, according to the settled doctrines of the law of insurance, recognized in all the

adjudged cases, be resolved against the party whose language it becomes necessary to interpret. The construction must, therefore, prevail which protects the insured against the obligations arising from a strict warranty.

But it is contended that if the answers of the assured are to be deemed representations only, the policy was, nevertheless, forfeited, if those representations were untrue in respect of any matters material to the risk. The argument is, that if the insured was, at the time of his application, or had been at any former period of his life, seriously or in an appreciable sense, afflicted with scrofula, asthma, or consumption, his answer, without qualification, that he had never been so afflicted, being untrue, avoided the policy, without reference to any knowledge or belief he had upon the subject. The soundness of this proposition could not be disputed if, as assumed, the knowledge or good faith of the insured, as to the existence of such diseases, was, under the terms of the contract in suit, of no consequence whatever in determining the liability of the company. But is that assumption authorized by a proper interpretation of the two instruments constituting the contract? We think not.

Looking into the application upon the faith of which the policy was issued and accepted, we find much justifying the conclusion that the company did not require the insured to do more, when applying for insurance, than observe the utmost good faith, and deal fairly and honestly with it, in respect of all material facts about which inquiry is made, and as to which he has or should be presumed to have knowledge or information. The applicant was required to answer yes or no as to whether he had been afflicted with certain diseases. In respect of some of those diseases, particularly consumption, and diseases of the lungs, heart, and other internal organs, common experience informs us that an individual may have them, in active form, without at the time being conscious of the fact, and beyond the power of any one, however learned or skilful, to discover. Did the company expect, when requiring categorical answers as to the existence of diseases of that character, that the applicant should answer with absolute certainty about matters of which certainty could not possibly be predicated?

Did it intend to put upon h..m the responsibility of knowing that which, perhaps, no one, however thoroughly trained in the study of human diseases, could possibly ascertain?

We shall be aided in the solution of these inquiries by an examination of other questions propounded to the applicant. In that way we may ascertain what was in the minds of the parties.

Beyond doubt, the phrase " other known cause," in the fourteenth question, serves the double purpose of interpreting and qualifying all that precedes it in the same clause or sentence. For instance, the applicant was not required to state all the circumstances, within his recollection, of his family history, but those only which rendered the proposed insurance more than usually hazardous, and of which he had personal knowledge, or of which he had information fairly justifying a belief of their existence. If he omitted to state circumstances in his " family history " of which he had no knowledge, nor any information deserving attention, that omission would not avoid the policy, although it subsequently appeared that those circumstances, if known to the company, would have shown that the proposed insurance was more than usually hazardous. Apart from other questions or clauses in the application, the tenth question would indicate that an incorrect or untrue answer as to whether the applicant's " father, mother, brothers, or sisters had been affected with consumption, or any other serious family disease, such as scrofula, insanity, &c.," would absolve the company from all liability. Yet, in the fourteenth question, the insured, being asked as to his family history and as to " hereditary predispositions "—an inquiry substantially covering some of the specific matters referred to in the tenth question—was, as we have seen, only required to state such circumstances as were known to him, or of which he had information, and which rendered an insurance upon his life more than usually hazardous. So, in reference to that part of the fourteenth question relating to the then physical condition of the applicant. Suppose, at the time of his application, he had a disease of the lungs or heart, but was entirely unaware that he was so affected. In such a case, he would have met all the

requirements of that particular question, and acted in the utmost good faith, by answering no, thereby implying that he was aware of no circumstance in his then physical condition which rendered an insurance upon his life more than usually hazardous.   And yet, according to the contention of the company, if he had, at any former period of his life, been afflicted with a disease of the heart or lungs, his positive answer to the seventh question, that he had not been so afflicted, was fatal to the contract; this, although the applicant had no knowledge or information of the existence at any time of such a disease in his system.   So, also, in reference to the inquiry in the fourteenth question as to any "constitutional infirmity" of the insured.   If, in answering that question, he was required to disclose only such constitutional infirmities as were then known to him, or which he had reason to believe then existed, it would be unreasonable to infer that he was expected, in answer to a prior question in the same policy, to guarantee absolutely, and as a condition precedent to any binding contract, that he had never, at any time, been afflicted with diseases of which, perhaps, he never had, and could not have, any knowledge whatever.

The entire argument in behalf of the company proceeds upon a too literal interpretation of those clauses in the policy and application which declare the contract null and void if the answers of the insured to the questions propounded to him were, in any respect, untrue.   What was meant by " true " and " untrue " answers ?   In one sense, that only is true which is conformable to the actual state of things.   In that sense, a statement is untrue which does not express things exactly as they are.   But in another and broader sense, the word " true " is often used as a synonym of honest, sincere, not fraudulent. Looking at all the clauses of the application, in connection with the policy, it is reasonably clear—certainly the contrary cannot be confidently asserted—that what the company required of the applicant, as a condition precedent to any binding contract, was, that he would observe the utmost good faith towards it, and make full, direct, and honest answers to all questions, without evasion or fraud, and without suppression, misrepresen-

tation or concealment of facts with which the company ought to be made acquainted ; and that by so doing, and only by so doing, would he be deemed to have made "fair and true answers."

If it be said that an individual could not be afflicted with the diseases specified in the application, without being cognizant of the fact, the answer is that the jury would, in that case, have no serious difficulty in finding that he had failed to communicate to the company what he knew or should have known was material to the risk, and that, consequently, for the want of "fair and true answers," the policy was, by its terms, null and void.  But, whether a disease is of such a character that its existence must have been known to the individual afflicted with it, and, therefore, whether an answer denying its existence was or not a fair and true answer, is a matter which should have been submitted to the jury.  It was an erroneous construction of the contract to hold, as the court below did, that the company was relieved from liability if it appeared that the insured was, in fact, afflicted with the diseases, or any of them, mentioned in the charge of the court.  The jury should have been instructed, so far as the matters here under examination are concerned, that the plaintiff was not precluded from recovering on the policy, unless it appeared from all the circumstances, including the nature of the diseases with which the insured was alleged to have been afflicted, that he knew, or had reason to believe, at the time of his application, that he was or had been so afflicted.

It results from what has been said that the judgment must be reversed, with directions to set aside the verdict, and for further proceedings consistent with this opinion.

*It is so ordered.*