HOWARD v GOLDEN STATE MUTUAL LIFE INSURANCE
COMPANY

1. PLEADING—ADMISSIONS—REQUEST FOR ADMISSIONS—FAILURE TO
   RESPOND—COURT RULES.

   A party who fails to respond to an opposing party's request for
   admissions is deemed to admit the factual matters contained in
   the request (GCR 1963, 312.2).

2. JUDGMENT—SUMMARY JUDGMENT—COURT RULES—MOTION FOR
   SUMMARY JUDGMENT—ISSUES OF FACT.

   Courts reviewing motions for summary judgment are liberal in
   finding a genuine issue as to a material fact; the benefit of any
   reasonable doubt will be given to the party against whom the
   motion is made, and before granting the motion the court must
   be satisfied that it is impossible for the claim or defense of the
   party against whom the motion is made to be supported at trial
   because of some deficiency which cannot be overcome (GCR
   1963, 117.2[3]).

3. INSURANCE—AVOIDING PAYMENT OF PROCEEDS—MISREPRESENTA-
   TION—SUBSTANTIATION OF CLAIM—BURDEN OF PROOFS—RELI-
   ANCE—MATERIALITY—CONSTRUCTION.

   Substantiation of a claim of misrepresentation to avoid payment
   of insurance proceeds requires an insurance company to prove

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 633.
[2, 10, 11] 73 Am Jur 2d, Summary Judgment § 1.
[3] 43 Am Jur 2d, Insurance § 257 *et seq.*
  44 Am Jur 2d, Insurance § 2067.
[4] 43 Am Jur 2d, Insurance § 275.
[5, 6] 43 Am Jur 2d, Insurance §§ 736–738.
[7] 44 Am Jur 2d, Insurance § 2068.
[8, 9] 43 Am Jur 2d, Insurance § 746.
[9] 43 Am Jur 2d, Insurance § 1106 *et seq.*
  Insertion by insurer's agent in application of false answers to
    questions correctly answered by insured, or answers suggested by
    agent. 81 ALR 833, s. 117 ALR 790, 148 ALR 507.
[10] 43 Am Jur 2d, Insurance § 760.
  44 Am Jur 2d, Insurance §§ 2055, 2121.

with clear and convincing force that a misrepresentation was made, that the insurer relied upon the statement, and that the misrepresentation was material to the risk and hazard accepted by the insurer; the insurance policy will be liberally construed in favor of the insured.

4. APPEAL AND ERROR—INSURANCE—INSURANCE CONTRACT—CONSTRUCTION—INSURANCE APPLICATION—CLEAR LANGUAGE.

The Court of Appeals in resolving doubts as to the meaning to be given the terms of an insurance contract will note the purposes for seeking insurance and avoid an interpretation of the policy which would forfeit rights which the insured may have believed he was securing but which because of the failure of the insurer to use clear language in the application are now cast in doubt.

5. INSURANCE—AVOIDING PAYMENT OF PROCEEDS—MISREPRESENTATION—GOOD FAITH—CONSTRUCTION—ABSOLUTE REPRESENTATION —WARRANTY.

An insurance policy will not be avoided by the untruthfulness of a representation made in good faith if it is possible to construe the policy so as not to make the statement an absolute representation or warranty.

6. INSURANCE—POLICY OF INSURANCE—APPLICATION—MISREPRESENTATION—TRUTH—FRAUD—KNOWLEDGE—REASON TO KNOW.

Misrepresentation in insurance law refers to a truth synonymous with sincerity and lack of fraud, rather than to the literal meaning of truth, which is relating things exactly as they are, and the truth or falsity of a representation on an insurance policy should be examined in the light of what the applicant knew or had reason to know at the time of his application.

7. INSURANCE—LIFE INSURANCE—HEALTH INSURANCE—APPLICATION FOR INSURANCE—GOOD FAITH—ISSUES—TRIER OF FACTS—EVIDENCE.

Good faith in the completion of an application for life or health insurance is an issue for the trier of facts where the evidence conflicts.

8. INSURANCE—APPLICATION FOR INSURANCE—REPRESENTATION— WARRANTIES—FRAUD.

Statements by an insured on an insurance application are deemed representations and not warranties, in the absence of fraud (MCLA 500.4016).

9. INSURANCE—LIFE INSURANCE—APPLICATION FOR INSURANCE—
   PRINCIPAL AND AGENT—MEDICAL FACTS FAIRLY DISCLOSED—ER-
   RONEOUS OR MISLEADING ANSWERS—ESTOPPEL—FRAUD—EVI-
   DENCE—JUDGMENT—SUMMARY JUDGMENT.

   Essential medical facts fairly disclosed by an applicant for life
   insurance to the insurer's agent are received by the insurer as
   disclosed by the applicant where the agent by unilateral mis-
   take or design inserted erroneous or misleading answers in the
   application, and the insurer will stand fully estopped in an
   action for the proceeds of the policy from asserting that the
   erroneous or misleading answers constitute fraud; testimony of
   the agent involved in soliciting and selling the contract of
   insurance may be essential to the case where an insurer seeks
   summary judgment on the basis of erroneous or misleading
   answers in an application for insurance.

10. INSURANCE—LIFE INSURANCE—APPLICATION FOR INSURANCE—MIS-
    STATEMENTS—VOIDING INSURANCE POLICY—CAUSE-EFFECT RELA-
    TIONSHIPS—EVIDENCE—MEDICAL TESTIMONY—JUDGMENT—SUM-
    MARY JUDGMENT.

    A misstatement in an application for life insurance voids an
    insurance policy if the misstatement relates to a contributing
    factor in the death of the insured, and the deceased's cause of
    death, along with some medical testimony showing at least a
    superficial cause-effect relationship between the condition
    which was undisclosed on the application and the death of the
    insured should be introduced in evidence by an insurer seeking
    summary judgment in an action against the insurer for pro-
    ceeds of the life insurance policy.

11. INSURANCE—LIFE INSURANCE POLICY—APPLICATION FOR INSUR-
    ANCE—PROCEEDS—JUDGMENT—SUMMARY JUDGMENT—MISREP-
    RESENTATION—GOOD FAITH—RELIANCE.

    Summary judgment was an inappropriate vehicle for the disposi-
    tion of an action for proceeds of a life insurance policy on the
    basis of a misrepresentation at the time of application for the
    insurance and the case should have proceeded to trial on the
    issues of fact where there was no showing that facts omitted on
    the application for insurance were omitted other than in good
    faith, and reliance by the insurer upon any misrepresentation
    was not clearly demonstrated.

## Appeal from Wayne, John M. Wise, J. Submitted

Division 1 February 11, 1975, at Detroit. (Docket No. 18817.) Decided April 23, 1975. Leave to appeal denied, 395 Mich —.

Complaint by Johnnie W. Howard against Golden State Mutual Life Insurance Company for proceeds of a policy of life insurance. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Haynes & Donnelly, P. C.,* for plaintiff.

*Fischer, Franklin & Ford* (by *Edward B. Harrison* and *Brian J. Kott),* for defendant.

Before: D. E. HOLBROOK, P. J., and DANHOF and N. J. KAUFMAN, JJ.

D. E. HOLBROOK, P. J. Plaintiff, Johnnie W. Howard, brought suit upon a life insurance policy issued by defendant, Golden State Mutual Life Insurance Company. On October 17, 1973, plaintiff made a motion for summary judgment under GCR 1963, 117.2(3), and defendant made a similar motion the next day. On November 15, 1973, the trial judge granted summary judgment in favor of defendant.

On March 3, 1970, plaintiff had applied for a life insurance policy on the life of his wife, Ann Howard. An application was signed by Mr. and Mrs. Howard. Attached to the application was a questionnaire. Pertinent questions and answers appear therein as follows:

"Yes        No

"4. Has any person indicated in Item 1 above [the proposed insured] ever consulted or been treated by any physician or practitioner for, or had known indication of:

Yes    No

a. Brain or Nerve Disease; Dizziness, Epilepsy, Severe Headaches, Unconsciousness, Paralysis, Nervous Breakdown or other Nervous or Mental Disorder?        [X]

\*   \*   \*

e. Increased or Abnormal Blood Pressure?        [X]

\*   \*   \*

"5. Has any person indicated in Item 1 above ever:

\*   \*   \*

c. Had X-ray, Electrocardiogram, Blood or other medical studies?        [X]

\*   \*   \*

"7. Has any person indicated in Item 1 above during the last 5 years, OTHER THAN AS INDICATED IN ITEMS 4, 5 and 6, ever:

a. Consulted, been treated, or examined by any physician or practitioner?        [X]

b. Been under observation or treatment in any hospital, clinic or similar institution?        [X]

\*   \*   \*

"DETAILS of Questions 4–9, inclusive, should be given with respect to every person to whom a 'Yes' answer applies.

| "Question Number | Name of Person (PRINT) | Condition—Give Date, Duration, and Severity | Names and Addresses of each Physician, Hospital, etc (PRINT) |
|---|---|---|---|
| 7-b | Ann | 1966 (Aug) While Pregnant | Critterion Hospital 1554 Tuxedo Detroit, Mich. |
| 7-b | Ann | 1966 Jan–Aug While Pregnant | Critterion Hospital 1554 Tuxedo Detroit, Mich." |

Defendant issued a life insurance policy for $10,000, with plaintiff named as beneficiary, upon receipt of the application.

Mrs. Howard died on or about June 4, 1971, and plaintiff submitted proof of death and claim for payment. Defendant refused to pay upon grounds that it had discovered a certain omission of fact contained in the application for the policy. Specifically, the insured had not mentioned a previous admission to the emergency ward of Detroit General Hospital on May 23, 1969. In actuality, Mrs. Howard was rushed to the emergency room at Detroit General Hospital to have her stomach pumped. She had taken some pills, obtained from a friend, and had consumed more than a proper dosage.

There is some dispute as to further details of the incident. However, defendant served plaintiff with a request for admissions on March 28, 1973, to be answered within ten days. Since plaintiff failed to respond, the factual matters contained therein were deemed to be admitted, GCR 1963, 312.2; *Howard v City of Melvindale,* 27 Mich App 227; 183 NW2d 341 (1970). Thus, it was established that Mrs. Howard actually was admitted to the hospital on May 23, 1969, in an unconscious state, and released the next day. The unconscious condition was due to unknown narcotic drugs taken to the extent of causing an "overdose".

However, all of the above circumstances are not incompatible with the facts recited by plaintiff in his affidavit accompanying his summary judgment motion. He stated that the insured took some pills on the advice of a neighbor, without knowing their composition. He did state that she never was "admitted" to the hospital, but that must be rejected in light of the admissions made above.

Finally, he stated that the actual cause of death was unrelated to that incident.

Defendant's motion for summary judgment was supported by an affidavit of the vice-president of defendant, stating that had the foregoing been disclosed no underwriter would approve the application for life insurance where there was a failure to disclose a material fact to the carrier. From the granting of that motion, plaintiff appeals.

GCR 1963, 117.2(3) specifies as a ground for summary judgment that there is no genuine issue as to any material fact. In relation to this provision, the Supreme Court has written in *Rizzo v Kretschmer,* 389 Mich 363, 372–373; 207 NW2d 316, 320–321 (1973):

> "The courts are liberal in finding that a 'genuine issue' does indeed exist. As Honigman & Hawkins correctly comments,[1] (1) the court will 'give the benefit of any reasonable doubt to the opposing party' and (2) 'the court must be satisfied that it is impossible for the claim or defense to be supported at trial *because of some deficiency which cannot be overcome.'* (Emphasis added.)
>
> "For example, the point made by Justice Souris in his opinion in *Durant v Stahlin,* 375 Mich 628, 650–651; 135 NW2d 392, 400 (1965), is very illuminating. He says:
>
> " 'By insisting that summary judgment is not available whenever a presented issue of material fact turns upon the credibility of an affiant or witness whose deposition has been taken, *we intend thereby to limit severely the circumstances in which summary judgments properly may be entered.* The alternative would require our abandonment of what has been called the "truth-testing process of cross-examination" and would encourage unwarranted invasion by judges of the jury's exclusive province. *United States v United Marketing*

---

[1] Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Author's Comments to GCR 1963, 117.

*Association,* 291 F2d 851, 853, 854 (CA 8, 1961).' (Emphasis added.)
See also *Arber v Stahlin,* 382 Mich 300, 309; 170 NW2d 45, 49 (1969), *American Parts Co, Inc v American Arbitration Association,* 8 Mich App 156, 170; 154 NW2d 5, 13 (1967)." (Footnote omitted.)

Our determination must, therefore, disclose whether the present case properly fits within the severely limited circumstances for which summary judgment may be entered.

MCLA 500.2218; MSA 24.12218 provides:

"The falsity of any statement in the application for any disability insurance policy covered by chapter 34 of this code may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.

"(1) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.

"(2) A representation is a statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false.

"(3) In determining the question of materiality, evidence of the practice of the insurer which made the contract with respect to the acceptance or rejection of similar risks shall be admissible.

"(4) A misrepresentation that an applicant for life, accident or health insurance has not had previous medical treatment, consultation or observation, or has not had previous treatment or care in a hospital or

other like institution, shall be deemed, for the purpose of determining its materiality, a misrepresentation that the applicant has not had the disease, ailment or other medical impairment for which such treatment or care was given or which was discovered by any licensed medical practitioner as a result of such consultation or observation. If in any action to rescind any contract or to recover thereon, any misrepresentation is proved by the insurer, and the insured or any other person having or claiming a right under the contract, shall prevent full disclosure and proof of the nature of the medical impairment, the misrepresentation shall be presumed to have been material."[2]

In order to substantiate a claim of misrepresentation to avoid payment, the insurance company must: (1) demonstrate that misrepresentation was in fact made;[3] (2) show that the insurer relied upon the statement; and, (3) prove that the misrepresentation was material to the risk and hazard accepted by the insurer. See Scott, 1966 Annual Survey of Michigan Law, Insurance Law, 13 Wayne L Rev 206, 214 (1966), and cases therein footnoted. The burden is with the insurance company, see *Prudential Insurance Co of America v Cusick,* 369 Mich 269, 291; 120 NW2d 1, 12 (1963) (opinion of BLACK, J.), and *Farmers & Bankers Life Insurance Co v Allingham,* 457 F2d 21, 23 (CA 10, 1972), to prove the charge of misrepresentation "with clear and convincing force". *Hughes v John Hancock Mutual Life Insurance Co,* 351 Mich 302, 312; 88 NW2d 557, 563 (1958). The insurance policy is to be liberally construed in favor of the insured. See, for instance, *Schwind v Yacenick,* 9 Mich App 597; 157 NW2d 788 (1968), and *Arrigo's*

[2] For discussion of this statute *see Dick v John Hancock Mutual Life Insurance Co,* 434 F2d 808 (CA 6, 1970).

[3] *See,* for instance, *Simonson v Michigan Life Insurance Co,* 37 Mich App 79, 85; 194 NW2d 446, 449 (1971).

*Fleet Service, Inc v Aetna Life & Casualty Co,* 54
Mich App 482, 487; 221 NW2d 206, 209–210 (1974),
fn 5, *lv den* 392 Mich 812 (1974).[4]

In *Franklin Life Insurance Co v William J
Champion & Co,* 350 F2d 115, 124; 26 ALR3d 1034,
1048–1049 (CA 6, 1965), *On Rehearing,* 353 F2d
919; 26 ALR3d 1057 (1965), *cert den,* 384 US 928;
86 S Ct 1445; 16 L Ed 2d 531 (1966), Senior Judge
McAllister wrote:

"The general rule, then, declared by the Court in
*Moulor v American Life Insurance Co,* 111 US 335; 4 S
Ct 466; 28 L Ed 447 (1884), is that a policy will not be
avoided by the untruthfulness of a representation made
in good faith if it is possible to construe the policy so as
not to make the statement an absolute representation
or warranty."

Judge McGREGOR, of this Court, relied upon the
*Champion* case to give clarity and some sense of
order to this problem in Michigan in *Lipsky v
Washington National Insurance Co,* 7 Mich App
632, 637–639; 152 NW2d 702, 705 (1967), where he
wrote:

"The appellant brings to this Court strong statements

---

[4] *Cf.* Anno, *Insured's Statement, in Application for Life or Health
Insurance or Its Reinstatement, That He is in Good Health, as
Absolute Representation of, or Mere Statement of his Good-Faith
Belief in, His Good Health,* 26 ALR3d 1061, 1065, 1067–1068.

Also, the failure to use clear language in the application will be
charged to the insurance company, see, for instance, *Siemers v United
Benefit Life Insurance Co,* 246 Minn 459, 465; 75 NW2d 605, 609
(1956), wherein it is stated:

"In resolving doubts as to the meaning to be given the terms of an
insurance contract, this court will note the purposes for seeking
insurance and will avoid an interpretation which would forfeit rights
which the insured may have believed he was securing but which
because of the failure of the insurer to use clear language are now
cast in doubt. *Weum v Mutual Benefit Health & Accident Association,*
237 Minn 89; 54 NW2d 20 (1952); *Freyberg v London & Scottish
Assurance Corp,* 246 Minn 417; 75 NW2d 203 (1956)."

We cannot determine that the language of the questionnaire was so
clear that all reading it would know exactly what it sought and
resolve any doubts clearly in favor of disclosure.

from several cases to support its position that the issue should not be fraud, but rather misrepresentation, however innocent or unknown. *Michael v World Insurance Company,* 254 F2d 663 (CA 6, 1958), interpreted Michigan law as the appellant does, and indeed, was used by the appellant in its brief on appeal. Like statements can be found in *General American Insurance Company v Wojciechowski,* 314 Mich 275; 22 NW2d 371 (1946). However, as correctly pointed out in *Ranger, Inc v Equitable Life Assurance Society of the United States,* 196 F2d 968 (CA 6, 1952), Michigan precedents can be found both for and against the theories argued by the parties in this case. Under one impressive line of cases, the appellant would be upheld, and under another equally impressive line of cases, the appellee would be upheld. The applicable statute, MCLA 500.2218; MSA 24.12218 offers little help, as its emphasis is upon the materiality of any representation and the appellant has offered adequate proof that the policy would never have issued if it knew that the appellee's daughter had ileitis at the time of the application (if, indeed, she did have).

"Had it not been for the extensive and recent attention focused on this matter by Judge McAllister, senior circuit judge of the Federal sixth circuit court of appeals, in *Franklin Life Insurance Company v William J Champion & Company,* 350 F2d 115 (CA 6, 1965), *cert den,* 384 US 928; 86 S Ct 1445; 16 L Ed 2d 531 (1966), this Court would have had little outside help in reconciling two diverse and strong lines of Michigan precedent. Drawing upon the leading case of *Moulor v American Life Insurance Company,* 111 US 335, 342–344; 4 S Ct 466, 470; 28 L Ed 447, 450 (1884), Judge McAllister observed that, in insurance law, misrepresentation refers to a truth synonymous with sincerity and lack of fraud, rather than to the literal meaning of truth, which is relating things exactly as they are. The truth or falsity of a representation on an insurance policy should be examined in the light of what the applicant knew or had reason to know at the time of his application. The contrary, more literal, and more strict rule would seem to be a 'hangover' from older cases which were construed in favor of the insurer. It must be remembered:

" 'The insured is not specially equipped to determine what facts are material to the acceptance of a risk. He may be expected to answer *in good faith* the questions that are put to him, but not to bring an understanding of medicine beyond that of the medical profession to the problem of materiality.' *Franklin Life Insurance Company v William J Champion & Company, supra,* at p 129.

"In the case before us, the appellee answered the questions put to him by the insurance application and the insurance agent. We agree with Judge McAllister that his answers should not be judged on a standard beyond which the appellee was capable of answering. There is evidence that the appellee's opinion on the minor consequences of his daughter's ailments was gained from and shared by the physician who had examined the daughter. Even if the appellant were not bound by the interpretation of the insurance agent, it is uncontradicted in this case that *minor ailments which do not materially affect or weaken the insurer are not considered to affect the risk.* See *Bendford v National Life & Accident Insurance Company,* 356 Mich 52; 96 NW2d 113 (1959). Accordingly, we find no error on the charge *to the jury* on the issue of misrepresentation." (Emphasis supplied.)

Good faith has become a primary issue in this context. See Anno, *Insured's Statement, in Application for Life or Health Insurance or Its Reinstatement, That He is in Good Health, as Absolute Representation of, or Mere Statement of his Good-Faith Belief in, His Good Health,* 26 ALR3d 1061, 1095. And that question is an issue for the trier of facts under conflicting evidence. *Id.* at 1099. *Cf. Kahoun v Metropolitan Life Insurance Co,* 37 Mich App 511; 195 NW2d 1 (1972), and Scott, Insurance Law, *supra,* p 218.

On the basis that the request for admissions stand as fact for our purposes herein, this Court must accept that certain information was not in-

cluded. This, however, is not dispositive of this case as the insurance company must show that the mistake was material to the risk or hazard to the insurer and that reliance was had upon the omission. In this case the testimony of the agent who solicited and sold the policy was not presented and no medical testimony was presented (in fact, there is nothing in the record disclosing what the cause of death of the insured was; the only background as a basis for summary judgment was the somewhat conclusionary affidavit of the vice-president of defendant stating unequivocally that had the unincluded information been presented to the insurance company it would have been "a factor of such materiality to a competent life underwriter that no such underwriter would approve an application for life insurance without a full inquiry into the nature and cause of the hospital admission and information obtained to satisfy the underwriter that the medical and/or moral factors involved [did] not increase the risk or hazard assumed by the insurer"). We do not find this to have been of such a substantial nature as to warrant the granting of summary judgment. Especially is this true in view of the fact that the omitted information may have been given to the agent.

Statements by an insured, in the absence of fraud, are deemed as representations and not warranties. MCLA 500.4016; MSA 24.14016. See also *Bronx Savings Bank v Weigandt,* 1 NY2d 545, 549–550; 154 NYS2d 878, 881; 136 NE2d 848, 850; 60 ALR2d 1422, 1426 (1956). "[I]t is not for an applicant to determine that which is and that which is not material to an insurance company's acceptance of a risk." *Woodall Industries, Inc v Massachusetts Mutual Life Insurance Co,* 483 F2d 986, 989 (CA 6, 1973); *cert den,* 414 US 1131; 94 S

Ct 871; 38 L Ed 2d 756 (1974). In this regard, that which was disclosed to the agent is of no small importance. In *Hughes v John Hancock Insurance Co, supra,* Mich 311; NW2d 562–563, the Court wrote:

"Where essential medical facts are fairly disclosed by the applicant to the insurer's agent, and the latter by unilateral mistake or design inserts erroneous or misleading answers in the application, the insurer will be taken as having received such disclosed information and will stand, fully estopped at our bar, from asserting that the erroneous or misleading answer or answers constitute fraud.

"A moment's reflection will disclose impelling reason for steady adherence to this rule where life insurance is involved. As the national advertising of this very defendant tells us, the worth of a life policy usually means everything to those who are last to leave the cemetery. If premiums have been timely paid and clear proof of fraud is wanting, they should receive due benefit thereof. However, when the insured's turn to pay terminates as the insurer's covenant to make good arises, agents of the insurer are, as we observe in the reported cases, often around to testify that inducing representations, reflected in the application, were made by the decedent without disclosure and without qualification. The latter, however, has passed to his reward and is unable to aid his widow when that which both have relied upon is threatened in court. His side of the story—excepting in rare instance as at bar—is never heard in these cases. The advantage thus lies with the insurer which, having clamored to sell its product followed by collection of premiums, would deny responsibility on charge of fraud when (within the statutory period of contest) the life it has agreed to insure has become extinct. We should abstain from precedent which increases the odds and, if unwilling or fearful of doing so, should at least advise prospective applicants for life insurance that the applicatory inquisition should be conducted in the presence of one's own physician."

The trial judge did not have the benefit of the testimony of the agent who sold this insurance. If Mrs. Howard's condition was disclosed to the agent and the agent determined it to be unimportant or failed to include it in the form, (1) there may well have been no misrepresentation, (2) the application was filled out in good faith, and, (3) the insurance company would be estopped from denial of coverage. *Cf. Simonson v Michigan Life Insurance Co,* 37 Mich App 79; 194 NW2d 446 (1971), and *Farmers & Bankers Life Insurance Co, supra,* p 24. Testimony of the agent involved in soliciting and selling this contract of insurance may be essential. See, for instance, *Prudential Life Insurance Co v Cusick, supra.*

There was no medical testimony to determine whether there was any cause-effect relationship between the condition which was undisclosed on the application and the death of the insured. We deem it advisable that such be presented. *Cf. Manufacturers Life Insurance Co v Beardsley,* 365 Mich 308, 311; 112 NW2d 514, 516 (1961), and, *Dedic v The Prudential Insurance Co of America,* 14 Mich App 274, 275; 165 NW2d 295, 296 (1968), where this Court upheld the granting of a motion for directed verdict to defendant after proofs, including a physician's testimony, had been adduced at trial. A misstatement in the application for insurance would void the policy if, in fact, it related to a contributing factor of the death of the insured. See, 26 ALR3d, *supra,* pp 1073–1074.

It appears to this Court that the deceased's cause of death should be presented, along with some medical testimony showing at least a superficial cause-effect relationship between the lack of information to the insurer and the death of the

insured.[5] This, in addition, goes to a basic issue, *viz.,* whether the decedent was in sound health when the policy issued. See *Bendford v National Life & Accident Insurance Co,* 356 Mich 52, 63; 96 NW2d 113, 118 (1959).

In *Mutual Benefit Life Insurance Co v Abbott,* 9 Mich App 547, 554–555; 157 NW2d 806, 809–810 (1968), this Court wrote:

"The Court pointed out in *Beardsley*[6] that the chancellor did not find intentional misrepresentation by the insured, but instead planted his decree upon the material effect the false statement had upon the insurer's acceptance of the risk. The Court recognized the holding in *Prudential Insurance Company of America v Ashe,* 266 Mich 667; 254 NW 243 (1934), that an insurance policy may be cancelled for an untrue statement made in good faith or even in ignorance of its falsity, if such misrepresentation materially affected the assumption of risk by the insurer. However, our Court in *Lipsky v Washington National Insurance Company,* 7 Mich App 632; 152 NW2d 702 (1967), had occasion to

[5] Thus, distinguishable is *Joplin v John Hancock Mutual Life Insurance Co,* 55 Wis 2d 650; 200 NW2d 607 (1972), where the contributing cause of death was clearly identified and related to the omitted information.

Further, *Delaney v Prudential Insurance Co of America,* 29 Wis 2d 345, 349; 139 NW2d 48, 50 (1966), is distinguishable, as the principal issue there for determination was:

"[W]hether there was credible evidence to support the jury verdict that there was no increase in the risk resulting from any false statements made by Mrs. Delaney in her application. To resolve this issue we must judge the jury verdict in the light of the familiar rules that (1) a jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings, (2) this is particularly true when the verdict has the blessing of the trial court, and (3) the evidence is to be viewed in the light most favorable to the verdict." (Footnotes omitted.)

Obviously, that case was not decided as a matter of law but rather one of fact.

These cases cited by defendant in support of its argument are of no help to its position.

[6] *Manufacturers Life Insurance Co v Beardsley,* 365 Mich 308; 112 NW2d 514 (1961).

consider this argument and pointed out that Michigan precedents can be found both for and against it. See, also, *Ranger, Inc v Equitable Life Assurance Society of United States,* 196 F2d 968 (CA 6, 1952).

"At the time the policies were reinstated in the instant case, the new insurance code, MCLA 500.2218; MSA 24.12218, was in effect. Under this section, it is provided that the falsity of any statement in the application for any disability insurance policy covered by the applicable chapter of the insurance code may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer. As pointed out in *Lipsky, supra,* this statute offers little help on the question raised by appellant as its emphasis is upon the materiality of any representation.

"The main question, however, in the instant case is whether defendant really made false answers to the questions contained in the application for reinstatement of insurance and whether he was under duty to disclose that he had received treatments for ulcers and emotional problems beginning in March 1956."

Here, the request for admissions notwithstanding, we cannot say that the omitted facts were misrepresentations. There is no showing that the omission was other than in good faith, and reliance upon any misrepresentation by the insurer has not been clearly demonstrated. Therefore, there remain serious and genuine issues of fact to be determined. Summary judgment was an inappropriate vehicle for the disposition of this case as a trial on the issues of fact should have been had.

Reversed and remanded for a trial consistent with this opinion. Costs to plaintiff.