**Walter KULA, Plaintiff,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation, Defendant.**

**No. 84–CV–4187–DT.**

United States District Court, E.D. Michigan, S.D.

July 8, 1985.

did not cite any authority in support of his view that state courts have concurrent jurisdiction

Robert J. Wendzel, Pontiac, Mich., for plaintiff.

Randolph D. Phifer, Detroit, Mich., for defendant.

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

La PLATA, District Judge.

On August 8, 1984, Plaintiff, Walter Kula, filed a lawsuit in the Wayne County Circuit Court based upon a life insurance policy issued by Defendant, Prudential Insurance Company of America. Incorporated in the State of New Jersey, where its

over claims brought pursuant to § 102 of the LMRDA, 29 U.S.C. § 412.

principal place of business is located, Defendant caused the matter to be removed to this court, pursuant to 28 U.S.C. § 1441(b), on September 7, 1985.

On June 8, 1982, the insured, Gary Kula, applied for a life insurance policy, naming his father, Walter Kula, the plaintiff herein, as his beneficiary. Attached to the application was a form containing questions concerning the medical history of the applicant. The following questions and answers were embodied therein:

"3. When was a doctor last consulted by:
a. Proposed insured? Mo. 04 Yr. 82

"4. Is any person to be covered now being treated or taking medicine for any condition or disease? No

"5. Has any person to be covered ever:
a. had any surgery or been advised to have surgery and has not done so? No
b. been in a hospital, sanitarium or other institution for observation, rest, diagnosis or treatment? No
c. regularly used or is any such person now using, barbiturates or amphetamines, marijuana or other hallucinatory drugs, or heroin, opiates or other narcotics, except as prescribed by a doctor? No
d. been treated or counseled for alcoholism? No
e. had life or health insurance declined, postponed, changed, rated-up or withdrawn? No
f. had life or health insurance canceled, or its renewal or reinstatement refused? No

"6. Other than as shown above, in the past 5 years has any person to be covered:
a. consulted or been attended or examined by any doctor or other practitioner? No
b. had electrocardiograms, X-rays for diagnosis or treatment, or blood, urine, or other medical tests? No
c. made claim for or received benefits, compensation, or a pension because of sickness or injury? No

"7. Does any person to be covered now have a known sign of any physical disorder, disease or defect not shown above? No

"8. What are the full details of the answer to 3 and to each part of 4 through 7 which is answered "Yes"?

| "Name & Question No. | Illness or other reason | Began Mo. Yr. | | Time lost from normal activities |
|---|---|---|---|---|
| 3a | Common Cold | 04 | 82 | None |

| "Full Recovery Mo. Yr. | | Print name and addresses of doctors and hospitals |
|---|---|---|
| 04 | 82 | Dr. Whitt, 8 Mile Rd., Detroit, MI |

"Mr. Kula is in excellent physical condition with no medical history to date."

---

Upon receipt of the application and the premium payment for the first month, Defendant issued a life insurance policy for $15,000.00, with Plaintiff designated as beneficiary. The insured sustained fatal injuries in an automobile accident on April 15, 1983. Thereupon, Plaintiff presented proof of death and a demand for payment. On the ground that the insured made a material misrepresentation in his application for the insurance policy, Defendant refused to pay the benefits to Plaintiff. Specifically, Defendant asserted that the insured did not reveal that he (1) was a psychiatric patient from September 17, 1980, through March 17, 1982, and (2) was confined in a hospital on four occasions during the years 1978–1980, where he was suffering from schizophrenia. It was the insurer's contention that had it been aware

of the actual medical condition of the insured, it would have rejected the life insurance application.

On June 4, 1985, Defendant filed a Motion for Summary Judgment, asserting that, as a matter of law, Plaintiff is not entitled to recover under the insurance policy, as a result of the material misrepresentations made by the insured, which were relied upon by Defendant in issuing the insurance policy. Appended to the Motion were affidavits of Larry Schmid and Thomas Shugar, agents of Defendant who accepted the application of the insured, and James King, a Senior Underwriting Consultant in Defendant's Underwriting Division. Both agents stated in their affidavits that during his interview with the insured, Shugar asked every question contained in the application and recorded the answers of the insured. King stated that the decedent's misrepresentation induced the Defendant to issue a life insurance policy:

4. That if the information discovered in the routine contestable investigation which was conducted following the death of the insured, Gary Kula, had been disclosed to The Prudential at the time of application, including a history of schizophrenia and treatment therefor, the application of Gary Kula for life insurance would have been rejected pursuant to those guidelines.

Opposing the motion for summary judgment, Plaintiff contends that the insurance agents expended a limited amount of time with the insured. He also testified that rather than asking the insured specific questions contained on the application, the agent solely inquired whether he had been recently hospitalized. Furthermore, he stated that his son had limited reading and writing skills:

Q (By Defendant's Attorney) Did your son have any kind of a learning disability?

A (By Plaintiff) Yes.

Q What was that?

A He was real slow. He was in a special room all the way through school. It was maybe 30, 40, 50 students. They go through schools. They graduated all together. They're real slow in reading.

Q Okay.

A Reading, writing, anything, you know. You could say he would be third grade, something like that.

Q Was he in a special education program?

A Same school, but they have special rooms for them. He went right through school. He was real slow. (Deposition of Walter Kula, p. 17–18)

Plaintiff maintains that the insured, a young man with learning disabilities, did not make any false representations during his interview with Defendant's agents. Contending that the language contained in the medical form was ambiguous, Plaintiff argues that questions of fact exist as to the amount of time Defendant's agent expended in his interview with the insured, the insured's ability to comprehend the questions posed to him, and the procedures employed by the agents in processing an application for a life insurance policy, particularly when the applicant is far below average in intelligence.

Under Michigan law, an insurer is entitled to avoid liability on an insurance policy where the insured made a material misrepresentation that affected either the acceptance of the risk or the hazard assumed by the insurer. M.C.L.A. § 500.-2218, M.S.A. § 24.12218; *General American Life Insurance Co. v. Wojciechowski*, 314 Mich. 275, 281, 22 N.W.2d 371 (1946). An insurance policy may be avoided on the basis of a material misrepresentation that affected the insurer's risk, even if no causal relation exists between the misrepresentation and the loss sustained under the policy. *Wickersham v. John Hancock Mutual Life Insurance Co.*, 413 Mich. 57, 63–67, 318 N.W.2d 456 (1982).

A case primarily relied upon by Defendant, *Woodall Industries, Inc. v. Massachusetts Mutual Life Insurance Co.*, 483 F.2d 986 (6th Cir.1973), *cert. denied* 414 U.S. 1131, 94 S.Ct. 871, 38 L.Ed.2d 756 (1974),

concerned whether an insurance company was entitled to rescind an insurance policy issued to an individual who died eleven months thereafter of a heart condition. When he applied for the policy, the insured failed to inform the insurance company's agent that he underwent an examination during the prior year, wherein his physician informed him that he suffered from "a significant heart murmur which [the physician] considered to be secondary to a defective aortic valve." Vacating a jury award in the amount of $75,000.00, the *Woodall* Court held that the insured's intentional, material misrepresentation induced the insurance company to accept the risk:

> There can be no question but what the insured knew that he had been examined by Dr. Paul Becker and from conversations at the time of his last illness, testified to by Dr. Becker, and undisputed, it is eminently clear that the insured continued to be aware of the heart difficulty which Dr. Becker had discovered and disclosed to the insured. It is undisputed on this record that had the defendant insurance company had knowledge of the facts misrepresented (by the untruthful answers to questions 3 and 4, particularly question 6) it would have refused to make the contract of insurance upon which the verdict depends. For the reasons herein stated we conclude that the answers given by the insured were misrepresentations which were material within the meaning of the Statute cited. M.C.L.A. 500.2218, M.S.A. 24.12218. Under these facts the motion for directed verdict made on behalf of the defendant should have been granted.

Similarly, in *Dick v. John Hancock Mutual Life Insurance Co.*, 434 F.2d 808 (6th Cir.1970), the Sixth Circuit Court of Appeals held that the insured's material misrepresentations in omitting to inform the insurer that he had seen a physician on nineteen occasions over the preceding five years was sufficient to absolve the insurer from paying under the policy.

In the case at bar, it is uncontroverted that the decedent did not inform the insur-ance company that he had undergone extensive psychiatric treatment and hospitalization during the four years preceding the issuance of the policy. From Plaintiff's perspective, it is apparent that neither the questions embodied on the medical application nor Defendant's agents, Larry Schmid and Thomas Shugar, specifically inquired whether Plaintiff had been treated for emotional problems. During the cross-examination phase of his discovery deposition, Schmid acknowledged that the application for insurance does not contain any specific questions concerning an applicant's psychiatric history:

> Q (By Plaintiff's Attorney) Do you recall during the application process and questioning of Gary Kula by Mr. Shugar, whether or not he inquired directly as in regards to any type of mental or psychiatric problems Mr. Kula may have had?
>
> A (By Larry Schmid) As far as that direct question, no, because that's not contained in our series of questions on medical information.
>
> Q So, basically, in any terms of medical or psychiatric, mental physical condition, the only questions that would be asked are those directly on the application itself; is that correct?
>
> A Yes. (Deposition of Larry Schmid, p. 11–12)

In *Howard v. Golden State Mutual Life Insurance Co.*, 60 Mich.App. 469, 231 N.W.2d 655 (1975), the trial court granted a summary judgment in favor of the insured in a lawsuit filed by the beneficiary of the insured. The basis for the trial court's ruling was the insured's failure to inform the insurance company that she had been treated at an emergency ward of a Detroit hospital for an accidental overdose of drugs.

In reversing the lower court, the Michigan Court of Appeals held, among other things, that the failure to use clear language in the insurance application will be imputed to the insurance company. *Howard* at 478 n. 4, 231 N.W.2d 655. Additionally, the *Howard* Court, quoting from *Lip-*

sky v. *Washington National Insurance Co.*, 7 Mich.App. 632, 636–637, 152 N.W.2d 702 (1967), set forth the proposition that an insured usually does not have a vast amount of medical knowledge, and, thus, cannot be expected to be aware of the facts that are material to an insurance company's acceptance of a risk. *Howard* 60 Mich.App. at 478–480, 231 N.W.2d 655.

In ruling on a motion for summary judgment, a trial court views the record in a light most favorable to the party opposing the motion. *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir.1958); *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). The design of a motion for summary judgment is not to permit the court to decide issues of fact, but, rather, to determine whether there is an issue of fact to be adjudicated. *Aetna Insurance Co. v. Cooper Wells & Co.*, 234 F.2d 342, 345 (6th Cir.1956); C. Wright, Law of Federal Courts, § 99 at 492 (3d ed. 1976).

Applying the foregoing authorities to the matter at bar, the Court concludes that, unlike the factual settings in *Woodall*, supra, and *Dick*, supra, where the insured parties clearly failed to disclose physical, rather than psychiatric, health problems, numerous questions of fact exist, making the case an inappropriate one to grant a summary judgment. The Court finds that questions of fact exist as to the following material issues:

1. What amount of time was expended by the insurance agents in reading and explaining the insurance application to the insured, Gary Kula?

2. Did Gary Kula suffer from a reading disability, and, if so, were Defendant's agents aware, or should they have been aware, of the disability?

3. Were the questions concerning an applicant's medical history ambiguous in regard to whether an applicant had undergone psychiatric treatment and hospitalization?

4. Should the insured's failure to inform Defendant of his psychiatric history be deemed a material misrepresentation?

5. Had Defendant been aware of Gary Kula's psychiatric history, would it have issued the life insurance policy?

Accordingly, Defendant's Motion for Summary Judgment is DENIED.

So Ordered.